**In re L.D.F., a Minor.**

**Appeal of L.D.F.**

Superior Court of Pennsylvania.

March 18, 2003.

Barbara Bailey, Public Defender, Philadelphia, for appellant.

Before KLEIN, BECK and CAVANAUGH, JJ.

OPINION BY BECK, J.:

¶ 1 This case presents an issue of first impression in that it prompts our review of a trial court order denying a minor's request to be deemed sufficiently mature to give informed consent to an abortion under the Abortion Control Act, 18 Pa.C.S.A. §§ 3201–20 (the Act). This Opinion is filed in support of our February 13, 2003 order, which reversed the trial court's order denying the minor's petition and permitted the abortion to proceed.

¶ 2 LDF[1] is a young woman born on March 25, 1985. On February 4, 2003, the date she filed a Petition for Declaration of Maturity to Consent to Abortion in the Philadelphia Court of Common Pleas, she was seven weeks shy of her eighteenth birthday and approximately nineteen weeks pregnant Pursuant to the Act, the trial court appointed counsel (the Defender Association of Philadelphia) and scheduled a hearing for February 6, 2003. The hearing was confidential, as the Act requires, and no stenographer was present. At the end of the proceedings, the trial judge denied the petition.

¶ 3 In preparation for an appeal to this court, counsel prepared a statement in lieu of transcript (the Statement). The trial court added a single clause to the Statement and adopted the remainder in its entirety. The complete statement, with the court's amendment set out in italics, follows:

A hearing was held on February 6, 2003, before the Honorable Myrna Field in her chambers in Room 314, Family Court, 1801 Vine Street, Philadelphia, Pennsylvania. Judge Field heard a "Petition for Declaration of Maturity to Consent to an Abortion or in the Alternative for Declaration of Consent as Being in the Minor's Best Interest," which is attached as Exhibit "A". Present were Judge Field, LFD and counsel, Barbara Bailey, Esquire. There was no stenographer. After LFD was sworn by counsel, the Court conducted the questioning of LFD. LFD testified that she is 17 years of age, that she is 20½ weeks pregnant, that she is in the custody of the Department of Human Services and lives with her one year old son in a program for teen mothers. She indicated to the court that the delay in seeking an abortion resulted from the confusion among staff in the Department of Human Services as to whether the department would pay for the procedure. Once LFD was advised that the department would pay for the procedure, she sought services. The Court declared that it "could not sign this order" *because of the late status of the pregnancy,* and denied the petition. This statement is submitted pursuant to Pa. R.A.P.1923 & 1924.

Statement in Lieu of Transcript and Record, dated 2/10/03.

¶ 4 The matter then came before a panel of this court for expedited appellate review pursuant to the Act.

¶ 5 The Abortion Control Act sets forth the statutory framework governing abortion in the Commonwealth. It permits a woman 18 years or older to seek an abortion provided she has given "voluntary and

1. We observe that appellant is referred to as both LDF and LFD in her filings with this court and/or the trial court. We have used the initials that appear in counsel's letter in support of appeal.

informed consent" at least 24 hours in advance of the procedure. 18 Pa.C.S.A. § 3205(a). The nature of informed consent is set out in the statute in precise terms. It requires that the woman seeking an abortion be informed of the risks associated with abortion as well as the alternatives to the procedure. It mandates that a physician provide the woman with access to materials printed by the state health department, which materials offer abortion alternatives. § 3205(2)(i). In addition, the physician must inform the woman that medical assistance benefits may be available to her and that the father of her unborn child is "liable to assist in the support of her child" even if he has offered to pay for the abortion.[2] § 3205(a)(2)(ii) & (iii). When the provisions of informed consent are satisfied, the Act permits abortions where the gestational age of a fetus is less than 24 weeks. § 3211(a).[3]

¶ 6 The Act includes a section titled Parental Consent, which sets forth the general rule that in the case of a woman less than 18 years of age, the physician must have consent of the minor and one of her parents. § 3206(a). In the event the parent refuses to give consent or the minor elects not to seek parental consent, the minor may file a petition in the court of common pleas requesting that the court deem her "mature and capable of giving informed consent." § 3206(c). In her petition, the minor must assert that she is fully informed of the risks and consequences of the abortion and has given consent thereto. The trial court is required to hold a prompt and confidential hearing on the matter. Its task, which must be accomplished within three days of the filing of the petition, is to determine whether the minor should be granted full capacity for the purpose of consenting to the abortion.[4] § 3206(f)(4). The minor's right to a Superior Court appeal of an adverse decision by the trial court is explicit in the statute. § 3206(f)(4).

¶ 7 LDF appealed the trial court's denial of her petition on February 10, 2003. We received the limited record, i.e., the Statement and a copy of LDF's petition, on February 11, 2003 and scheduled a hearing on the matter for February 13, 2003. On that date, we learned that the following day, February 14, 2003, was the final day that LDF's provider would perform the requested abortion. We ultimately ruled that the trial court order denying the petition should be reversed and the abortion should be permitted.

¶ 8 We begin our analysis by setting forth the standard of review in this

2. The printed materials that must be made available to all women seeking an abortion are addressed in detail in a separate section of the Act. 18 Pa.C.S.A. § 3208. The woman seeking an abortion must certify in writing that she has been provided with this information. 18 Pa.C.S.A. § 3205(a)(4).

3. An abortion may be performed on a fetus 24 weeks or older but only where a physician reasonably believes that allowing the pregnancy to continue will result in either the death of the woman or substantial and irreversible impairment of a major bodily function of the woman. § 3211(b).

4. The Act further provides that in the event the trial judge determines that the minor is not mature and capable of giving consent or does not claim to be, the court "shall determine whether ... an abortion ... would be in her best interests." § 3206(d). If it determines that the best interests of the woman are advanced by an abortion, the court "shall authorize a physician to perform the abortion." Id. While this subsection appears to provide an alternate basis for authorizing an abortion in the absence of a minor's maturity and capacity, we refrain from discussing it here because we rely on the maturity and capacity provisions of the Act in reaching our decision.

case. In the absence of direction in the statute or controlling case law, we adopt an abuse of discretion or error of law standard. An abuse of discretion is defined as not merely an error of judgment, but also a conclusion that the law has been overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830, 834 (2002) (citing *In re Women's Homeopathic Hospital of Philadelphia*, 393 Pa. 313, 142 A.2d 292, 294 (1958)). In this case, we conclude that the trial court misapplied the Abortion Control Act.

¶ 9 While the record before us is exceedingly slim, we recognize that the confidentiality mandated by the Act, as well as the strict time limitations it imposes, leave little opportunity for the court and the parties to assemble a full record for review. Nonetheless, the Statement adopted and revised by the trial court, when considered in light of the assertions set out in LDF's petition, provides sufficient information upon which we may decide this appeal.

¶ 10 It is clear from the record that the single reason relied on by the trial court in denying LDF's petition was the fact that LDF was 20 weeks pregnant. According to the trial judge's handwritten amendment to the Statement, LDF's "late status" pregnancy prevented the court from granting LDF's petition. However, there is nothing in the Act that authorizes the court to rely on such a factor.

¶ 11 The Act permits informed consent abortions for women pregnant for less than 24 weeks. In the event a minor wishes to have an abortion without parental or guardian consent, the Act requires the trial court to hold a hearing to determine whether the minor is "mature and capable" of giving consent herself. If the court were permitted to consider the number of weeks of a pregnancy in reaching its decision, the results would be completely arbitrary and, contrary to the statute, unrelated to the maturity or capacity of the minor. For instance, some judges may institute a 20–week cutoff; others may consider 18 weeks too late. Still others might limit abortions for minors to 12 weeks. The Act's clear provision that informed consent abortions are lawful in pregnancies of less than 24 weeks must control. Thus, where a minor is mature and capable of giving informed consent, she is entitled under the Act to have an abortion if her pregnancy has not advanced to 24 weeks. The trial court erred in ruling otherwise.

¶ 12 Now that we have determined that the trial court's order was erroneous, the question remains whether the record supports maturity. We find that it does.

¶ 13 First, the record, albeit slim, establishes LDF's maturity and capacity to consent. The record reveals that LDF is nearly 18. Although under the custody of the Department of Human Services (DHS), she currently lives with her one-year-old child in a program for teen mothers and so has experienced both childbirth and motherhood. Pursuant to the Act's mandates, she consulted with a medical provider for counseling over two months ago and at that time was fully informed of the risks, consequences and alternatives to abortion. The uncertainty of whether DHS would pay for the abortion caused her delay in moving forward. Once DHS agreed to pay for the procedure, she filed a petition pursuant to the Act. All of these factors militate in favor of LDF's maturity and capacity.

¶ 14 Second, the trial judge's limited amendment to the Statement supports our conclusion that only the number of weeks of LDF's pregnancy, and not a lack of

maturity or capacity on LDF's part, prompted the court's decision to deny the petition. If the court believed, contrary to all of the indicators set out above, that LDF lacked maturity and capacity to consent, it could have noted that fact on the Statement. Instead, it added only the notation it did, while leaving unchanged the declarations in support of maturity and capacity set out in the statement.

¶ 15 Third, a remand under these facts is impractical. By the time the matter reached this court, LDF's pursuit of a lawful abortion, which she had begun some nine weeks earlier, was nearly out of time. A remand may have resulted in additional information upon which to base our decision, but the issue itself would have been moot.

¶ 16 The dissent concludes that there is "no evidence whatsoever" that LDF is mature enough to be capable of informed consent and the trial court's failure to make an explicit ruling of maturity or capacity precludes our resolution. We disagree. Although it would have been preferable for the trial court to have explicitly stated its conclusions as to maturity, we are confident in relying on our analysis set out above as the basis for our conclusion that maturity and capacity is established on the record.

¶ 17 The dissent also concludes that while we may have the power to vacate the trial court's order here, we cannot reverse it, i.e., direct that LDF's petition be granted. We do not agree. The Act provides for a prompt hearing in the trial court and a swift right of appeal in this court. The decisions of both courts must occur within a matter of days. The Act explicitly recognizes the time constraints in matters such as these and those constraints are particularly relevant in this case. The provisions of the Act lead us to conclude that where the record supports the grant of a petition under § 3206, this court is authorized to order such a grant, notwithstanding the trial court's denial.

¶ 18 Based on the record before us, we conclude that the trial court erred in relying on an impermissible factor in denying LDF's petition. Further, we find that LDF's maturity and capacity to consent, as well as her actual consent, has been established. As a result, the order of the trial court must be reversed and LDF's petition must be granted.

¶ 19 Order reversed; jurisdiction relinquished.

¶ 20 Judge CAVANAUGH files a dissenting opinion.

## DISSENTING OPINION BY CAVANAUGH, J.:

¶ 1 This Dissenting Opinion is written in order to give expression to my noted dissent to a panel Order of this court entered February 13, 2003. It is inspired in part by reason of the fact that there are no appellate expressions relating to the subject provisions of the Abortion Control Act, 18 Pa.C.S.A. §§ 3201–3220.

### History

¶ 2 This matter came before a judge of the Common Pleas Court of Philadelphia County pursuant to a petition filed on behalf of L.D.F., a minor. The petition was filed under 18 Pa.C.S.A. § 3206(c) wherein, under certain circumstances, a minor may petition to receive court consent to an abortion. The court, thereafter, entered an order denying the petition. Since the matter was heard without a court reporter's presence to provide a transcript, the exact language of the hearing is not available to this court. In addition, since the court did not enter a formal order, counsel for the petitioner prepared a statement in lieu of transcript and record which the

court filed and approved under date of 2/10/03. In that statement, the court added, in handwriting, her reasons for refusal to sign the consent order, to wit, "because of the late state of the pregnancy" and affixed her initials thereto. At the hearing before the trial court, there was no finding by the court as to the maturity of L.D.F. Nevertheless, the majority has inferred that L.D.F. was sufficiently mature to consent on her own to the abortion.

### Statutory Provisions

¶ 3 The judicial obligations under § 3206(c) are not clear. On the one hand, it can be read as a provision which requires the court to determine if the child is sufficiently mature to give informed consent to an abortion and, thereafter, obliges the court, in the role of *loco parentis*, to enter an order authorizing or refusing the abortion.

¶ 4 On the other hand, the provision may be read as simply providing that the court should determine whether or not the child is sufficiently mature to make her own decision. The majority has obviously read this provision in the latter sense since it, on its own, makes a fact finding that L.D.F. is sufficiently mature to consent to the abortion and, thereafter, gratuitously enters an order by this court authorizing the abortion. If the majority's interpretation of subsection (c) is correct, it does two things which are, in my opinion, incorrect under the law. First, it infers that the trial court found maturity when there is no evidence whatsoever upon which to base this inference. Secondly, the majority enters an authorizing order in the face of denial by the trial court of such an order and under circumstances where there is no

provision for the entry of an order by an appeals court since we are only reviewing the actions of a trial court.[5]

¶ 5 Rather, I would read the trial court's action as having been pursuant to § 3206(d) which provides that the court may determine that the child is not mature and capable of giving informed consent and further determines that the abortion would not be in her best interests. I would, therefore, affirm the denial of the petition to approve the abortion.

### Prudential Considerations

¶ 6 Several comments concerning these procedures are pertinent. First, it is reasonable that there would not be a transcript of the trial court proceedings nor a detailed, reasoned court order prepared by the trial court. These jurisdictional prudential efficacies are dictated by the confidentiality and obvious temporal features of such proceedings.

¶ 7 Secondly, our panel discussed the possibility of remanding the matter to the trial court for an explication of her findings and reasons, but we were told by the child's attorney at the hearing on 2/13/03, that the final day for an order permitting the achievement of an abortion in this case was 2/14/03. Under the circumstances, obviously a remand to the trial court was not feasible.

¶ 8 Thirdly, there is nothing in the statute or the rule of court, Pa.R.A.P. 3801–3807, which provides for a standard of review. No one has suggested that the function of the appeals court in this setting is to provide a *de novo* hearing and determination. *Cf. In re Petition of Anonymous 2*, 253 Neb. 485, 570 N.W.2d 836

---

5. The majority grievously errs by adopting the period of 24 weeks gestation as the standard for permission to abort. However, this stage of gestation is the standard for determination of felonious misconduct—not a standard for reasonableness under all the circumstances. Under the deadlines established by the abortion provider in this case, it is obvious that they were wary of possible exposure to criminal sanctions.

(1997) (holding that under Nebraska statute, appellate review is *de novo*). Since the matter is reviewed under traditional appellate principles, I have considered the matter under the least restrictive doctrine, *i.e.*, abuse of discretion. *Compare Ex parte Anonymous*, 806 So.2d 1269 (Ala. 2001) (finding of fact not to be set aside unless clearly erroneous) and *In re Jane Doe 2*, 19 S.W.3d 278 (Tex.2000) (appellate review of trial court's "best interests" determination is pursuant to abuse of discretion standard).

¶ 9 In my opinion, for the above stated reasons, the majority has acted gratuitously and without legal foundation and the trial court did not abuse its discretion.