33 A.3d 615

**In the Interest of Jane DOE, a Minor.**

**Appeal of Jane Doe.**

Supreme Court of Pennsylvania.

Submitted Nov. 1, 2010.

Decided Dec. 22, 2011.

340

Frederick N. Frank, Frank, Gale, Bails, Murcko & Gubinsky, P.C., Pittsburgh, for PG Publishing Co., Morning Call, Inc., Philadelphia Media Network, Inc., PA Newspaper Assoc., Participant.

Howard Burton Elbling, Randall H. McKinney, for Jane Doe.

Thomas W. Corbett Jr., John G. Knorr III, Calvin Royer Koons, PA Office of Attorney General, Harrisburg, for Petitioner Amicus Curiae, Attorney General of Pennsylvania.

Witold J. Walczak, American Civil Liberties Union of Pennsylvania, for Petitioner Amicus Curiae, ACLU of Pennsylvania.

Richard E. Connell, Ball, Murren & Connell, Harrisburg, for Respondent Amicus Curiae, Pennsylvania Catholic Conference.

Randall Luke Wenger, Boyle Neblett & Wenger, Camp Hill, for Respondents Amicus Curiae, Independence Law Center and PA Pro–Life Federation & PA Family Institute.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice BAER.

Under prevailing decisions of the United States Supreme Court, the federal Constitution has protected a woman's right to choose to have an abortion before viability and to obtain the abortion without undue governmental interference. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The High Court has ruled that a state may require a minor seeking an abortion to obtain the consent of a parent or guardian, provided, however, there is an adequate alternative procedure in place permitting the "judicial bypass" of the parental consent requirement for minors that the court finds to be mature and capable of consenting to an abortion. *Planned Parenthood v. Casey*, 505 U.S. 833, 899, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (plurality); *Bellotti v. Baird*, 443 U.S. 622, 643, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (plurality); *Planned Parenthood v. Danforth*, 428 U.S. 52, 74, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) (holding that in order to prevent another person from having an absolute veto power over a minor's decision to have an abortion, a state may not impose a blanket provision requiring the consent of a parent).

After these legal principles were announced, the General Assembly enacted the Pennsylvania Abortion Control Act ("Act"), Act of June 11, 1982, P.L. 476, No. 138 (as amended, 18 Pa.C.S. §§ 3201–3220). As a general rule, our Legislature has declared that, absent a medical emergency, a physician shall not perform an abortion upon an unemancipated pregnant woman under the age of 18 years without the informed consent of the pregnant woman and one of her parents. 18 Pa.C.S. § 3206(a). Germane to the issue before us, however, the Legislature further provided for the "judicial bypass" of the parental consent requirement and the judicial authorization for an abortion performed upon a minor where the court finds that the minor is "mature and capable of giving informed consent to the proposed abortion, and has, in fact, given such consent." *Id.* § 3206(c).[1]

1. Section 3206(c) states, in its entirety, as follows:

As discussed more fully herein, the trial court in the instant case denied the minor's application for judicial authorization for an abortion, reasoning, in significant part, that because the minor did not seek parental consent, she was not "mature and capable" of giving informed consent independently. The Superior Court affirmed the trial court's denial of judicial authorization, finding no abuse of discretion.

In this appeal, we examine the standard of review applicable to the trial court's denial of the minor's petition for judicial authorization for an abortion, and determine whether the trial court may, under the Act, deny judicial authorization based upon the minor's failure to obtain parental consent. For the reasons that follow, we hold that an appeal from the denial of a minor's petition for judicial authorization for an abortion shall be reviewed under the abuse of discretion standard. Additionally, we hold that a trial court lacks statutory authority to deny a minor's petition for judicial authorization for an abortion based on her failure to obtain parental consent. Premised upon these conclusions, we vacate the order of the Superior Court, which affirmed the order of the trial court.

The record discloses that on or about March 19, 2010, a minor identified as Jane Doe ("Appellant") filed an Application for Judicial Authorization of an Abortion pursuant to 18

(c) PETITION TO COURT FOR CONSENT.—If both of the parents or guardians of the pregnant woman refuse to consent to the performance of an abortion or if she elects not to seek the consent of either of her parents or of her guardian, the court of common pleas of the judicial district in which the applicant resides or in which the abortion is sought shall, upon petition or motion, after an appropriate hearing, authorize a physician to perform the abortion if the court determines that the pregnant woman is mature and capable of giving informed consent to the proposed abortion, and has, in fact, given such consent.
18 Pa.C.S. § 3206(c). Alternatively, the Act permits the trial court to grant judicial authorization for an abortion when the minor is not mature and capable of giving informed consent, if the court finds that the abortion would be in the best interests of the minor. *Id.* § 3206(d). The propriety of the trial court's denial of judicial authorization under Section 3206(d) is not at issue here, as we examine only the trial court's examination of whether Appellant was mature and capable of providing informed consent under Section 3206(c).

Pa.C.S. § 3206.[2] The trial court held a confidential hearing regarding the application on the same day. Appellant testified that she was three months shy of her 18th birthday, and ten weeks pregnant. She explained that she was a high school senior with average grades, planned to attend college, and aspired to become a lawyer. She testified that during the previous week, a physician examined her, confirmed her pregnancy, and explained the procedure of an abortion, as well as the risks and complications. The physician also informed Appellant of alternatives to abortion, such as adoption, and raising the child herself. Appellant indicated that after fully considering the procedure, the risks, and the alternatives, she decided to proceed with the abortion, which was tentatively scheduled for later in the afternoon on the date of the hearing.

Additionally, Appellant testified that she did not obtain the consent of her mother, with whom she resided, because she feared her mother would "throw her out" if she discovered she was pregnant. N.T. 3/19/2010 at 11.[3] She stated that she would be unable to provide adequate care for a child because she was unemployed and planned to attend college in the fall. Appellant indicated she was not pressured or forced into making her decision to have an abortion, and instead reached her conclusion knowingly and voluntarily.

The trial court thereafter questioned Appellant, discovering that her pregnancy was unplanned, that her boyfriend was the purported father, and that he did not object to the abortion. The court also elicited that Appellant's sister and Appellant's brother's girlfriend had experienced unplanned pregnancies, and that both are struggling financially to take care of their children, but are "getting through it." *Id.* at 23. She explained that her mother was "happy" about her siblings having children because they, unlike her, "were old enough and actually on their own already to have children." *Id.* Appellant

2. The Act provides that "[c]ourt proceedings under this section shall be confidential . . . ." 18 Pa.C.S. § 3206(f). Accordingly, the facts disclosed herein do not reveal the identity of the minor seeking the abortion.

3. Appellant testified that she had no ongoing relationship with her father. *Id.* at 25.

further acknowledged that, as a high school student, she was financially dependent upon her mother. She also stated she was aware that there were agencies that could assist her in raising and caring for her child, although she could not recite such agencies by name.

Upon further court inquiry, Appellant testified that she consulted her boyfriend's sister about whether to have an abortion. Appellant responded in the negative when the court inquired whether the abortion provider offered her printed materials listing available agencies that would assist her in adoption; she did, however, agree with the court that adoptive parents could possibly provide a home for a child. Appellant further acknowledged the medical and emotional risks of abortion, but reiterated that she was unable to care for a child, and that her future plans would be jeopardized if she were forced to do so. Recognizing that her decision to terminate her pregnancy was the most significant decision she had ever made, Appellant stated that she was "not physically, mentally or emotionally ready for this baby." *Id.* at 35.

At this point in the proceedings, the trial court reserved judgment on Appellant's application on the ground that the abortion provider never gave her printed materials regarding alternatives to abortion, which the court found to be required by Section 3205(a) of the Act.[4] Appellant's counsel promptly requested a brief recess to allow Appellant to retrieve and review the enumerated printed materials from the abortion provider, and to reschedule her abortion for a later date. The trial court granted this request, and adjourned the hearing. Three hours later, the hearing recommenced, and Appellant testified that she had obtained the printed materials from the abortion provider during the court recess, reviewed them, and again decided to proceed with an abortion, which had been

4. Section 3205(a)(2) does not, in fact, require that these materials be given to the woman seeking an abortion. Rather, it requires that 24 hours prior to the abortion procedure, the physician or designated individual inform the woman that the state health department publishes certain printed materials, "and that a copy [of such printed materials] will be provided to her free of charge if she chooses to review it." *Id.* § 3205(a)(2)(i).

rescheduled for March 22, 2010. The printed materials were admitted into evidence.

At the conclusion of the hearing, the trial court denied Appellant's application, finding that she was not mature and capable of giving informed consent to an abortion, and that it was not in her best interests to have an abortion. When Appellant's counsel inquired as to the basis for the court's decision, the trial court expressed two concerns. Pertinent to the issue raised by Appellant, the court expressed its concern with her failure to inform her mother of the proposed abortion. The court stated, "it seems to me that in every case if we would allow a minor to use the bypass provision based solely on the representation that their [sic] parent would be disappointed with their [sic] decision, I can't imagine that any parent is going to receive news that their [sic] child has an unplanned pregnancy...." N.T. 3/19/2010 (Afternoon Session) at 58. When counsel reminded the court that Appellant additionally testified that she did not seek parental consent because she feared her mother would "throw her out," the court responded that it did not credit that portion of Appellant's testimony. *Id.* at 59.

Second, the court relied on the abortion facility's initial failure to provide Appellant with the printed materials it erroneously deemed required by Section 3205. *Id.* at 56. The court recognized that Appellant technically complied with its interpretation of Section 3205 because she reviewed the printed materials that afternoon, which was more than 24 hours prior to the abortion procedure, rescheduled to take place three days hence. The court believed, however, that Appellant's examination of such information after she had already decided to proceed with the abortion placed her in a position where she had "no choice but to proceed further." *Id.*

Five days later, on March 24, 2010, the trial court entered its findings of fact and conclusions of law in support of the denial of relief. Acknowledging that the Act does not address the burden of proof an applicant must satisfy to obtain judicial authorization for an abortion, the court afforded Appellant "the benefit of the doubt," and applied the lowest burden of

proof—preponderance of the evidence. Trial Ct. Slip Op. 3/24/2010 at 6.[5]

In support of its conclusion that Appellant failed to demonstrate that she was "mature and capable of giving informed consent to the proposed abortion," the trial court cited the following factors it deemed relevant to Appellant's intelligence and experience: her average high school grades; her improper use of English during the hearing;[6] her lack of work experience outside the home; her unfamiliarity with personal finances; her lack of prior significant decision-making; and the accompaniment of her mother when travelling abroad. Trial Ct. Slip Op. at 8–9.

As noted, the trial court also relied significantly on the fact that Appellant did not secure parental consent. It discredited Appellant's testimony that she feared her mother would "throw her out" if she discovered the pregnancy, finding that Appellant's mother had accepted the unplanned pregnancies of her sister and brother's girlfriend. The court reasoned that a "minor displays sound judgment and maturity by overcoming fear and anxiety by seeking the guidance and advice of their [sic] parent(s)/guardian(s), the person or persons most responsible for the minor's well[-]being and development." *Id.* at 15.

The court further considered the steps Appellant took to explore alternatives to the abortion procedure, and again cited the abortion provider's initial failure to furnish her with printed literature on the subject, *id.*, at 9–11, which the trial court believed the statute mandated. Indeed, the trial court specifically opined that "the actions of the abortion provider in failing to provide what the legislature has deemed critical information to a woman contemplating an abortion, directly impacted [Appellant's] ability to provide informed consent."

5. Appellant has not challenged the trial court's application of the preponderance of the evidence burden of proof, and the propriety of the same is not before us in this appeal.

6. Specifically, it noted that on two separate occasions during the hearing Appellant used improper grammar by stating, "I can't run no more," N.T. 3/19/2010 at 8, and "but that's not there no more." *Id.* at 17.

*Id.* at 12.[7] It reasoned that this lack of timely information "clearly affected [Appellant's] ability to testify in a straightforward, truthful manner," and that "[Appellant's] believability and credibility was [sic] questionable, which directly impacts this Court's duty to determine whether [Appellant] was mature and capable of providing informed consent." *Id.* at 13.

The trial court proceeded to examine Section 3206(d), which provides that the court may authorize a physician to perform an abortion, even if the pregnant woman is not mature and capable of giving informed consent, if the court determines that the performance of an abortion would be in the best interests of the woman. 18 Pa.C.S. § 3206(d). Finding that the abortion would not be in Appellant's best interests, the trial court declined to grant judicial authorization under this subsection of the Act.

Appellant thereafter filed a Motion for Reconsideration. Prior to oral argument on such motion, Appellant sought recusal of the trial court judge on the basis that he had been endorsed by a pro-life organization during his candidacy for judge, and that such fact created an appearance of impropriety, precluding him from examining the legal issue in an unbiased manner. On March 24, 2010, the trial court denied both the motion for recusal and the motion for reconsideration.

On appeal to Superior Court, Appellant argued that the trial court erred by (1) failing to recuse; (2) failing to set forth specific factual findings and legal conclusions as required by 18 Pa.C.S. § 3206(f)(1);[8] (3) determining that she was not sufficiently mature and capable of giving informed consent for the abortion; (4) considering Appellant's failure to consult

7. The court later stated, "The fact that [Appellant] left the initial Hearing, returned to the clinic, and obtained the written materials and other information, does not remedy the effect of this situation on [Appellant's] capacity and/or capability to provide informed consent." *Id.* at 14.

8. This section provides, in relevant part, that "[a] court of common pleas which conducts proceedings under this section shall make in writing specific factual findings and legal conclusions supporting its decision...." 18 Pa.C.S. § 3206(f)(1).

with her parent as a factor in determining maturity; and (5) determining that an abortion was not in Appellant's best interests.

The Superior Court affirmed in a memorandum opinion. Initially, the court found that the trial court did not abuse its discretion by denying Appellant's motion for recusal. The court further held that the trial court complied with Section 3206(f)(1) by filing a comprehensive opinion in which it made specific factual findings and legal conclusions. With regard to Appellant's remaining issues, which challenged the trial court's denial of her application for judicial authorization, the Superior Court relied on the trial court's opinion. One judge on the Superior Court panel concurred in part and dissented in part, without opinion.

Appellant subsequently filed in this Court a Confidential Petition for Review pursuant to the Act and Pa.R.A.P. 3811 (providing that "[w]ithin thirty (30) days of the entry of an order of the Superior Court denying an application for an abortion under 18 Pa.C.S. § 3206, an applicant may file a confidential petition for review consistent with Pa.R.A.P. 123 relating to applications for relief to the Pennsylvania Supreme Court.").

This Court granted Appellant's petition for review, limited to the issues of whether the Superior Court erred by reviewing the denial of judicial authorization under the abuse of discretion standard, whether the Act requires parental consent for a minor to obtain an abortion; and whether the trial court abused its discretion under the facts presented. We further invited the Attorney General to participate in this case to offer advocacy in addition to that presented by Appellant.

█ Before addressing the merits of Appellant's contentions, we recognize that this case is technically moot. Appellant acknowledged in her petition for review and in her appellate brief that, after the Superior Court's disposition of her appeal, she was no longer pregnant. Petition for Review at ¶ 5; Appellant's Brief at 14. Thus, our ruling in this case has no practical significance to Appellant. However, because

the questions presented herein are of public importance, are capable of repetition, and may evade review due to the condensed time frame evident in every pregnancy, and thus in every abortion case, an exception to the mootness doctrine applies. _See Commonwealth v. Dixon,_ 589 Pa. 28, 907 A.2d 468, 472–73 (2006) ("[A]n appellate court may decide a case where issues important to the public interest are involved, the nature of the question under consideration is such that it will arise again, and review will be repeatedly thwarted if strict rules of mootness are applied.").[9]

◼◼◼◼ Critical to disposition of all issues presented is a determination of the appropriate standard of appellate review.[10] Because the Act is silent on this fundamental point, we first consider Appellant's arguments on this issue. Appellant contends that the Superior Court erred by reviewing the denial of judicial authorization under an abuse of discretion standard, as suggested by the only published opinion interpreting the Act. _See In re: L.D.F.,_ 820 A.2d 714, 717 (Pa.Super.2003) (holding that in the absence of direction in the statute or controlling case law, the abuse of discretion standard governs appeals from the denial of a minor's application for judicial authorization for an abortion). To reverse a trial court's determination under the abuse of discretion standard, Appellant asserts, a reviewing court must find more than a mere error in judgment. Rather, she maintains, the appellate court must determine that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or

9. Because Appellant was no longer pregnant, and to afford the parties ample time to prepare briefs on these important issues, we did not adhere to the statutory five-day disposition of appeals under the Act. _See_ 18 Pa.C.S. § 3206(h) (providing that "[a]ny court to which an appeal is taken under this section shall give prompt and confidential attention thereto and shall rule thereon within five business days of the filing of the appeal").

10. The standard of review refers to the manner by which an appellate court examines a case or the "degree of scrutiny" that is to be applied to the appeal. _Morrison v. Dep't of Pub. Welfare,_ 538 Pa. 122, 646 A.2d 565, 570 (1994). _See also Commonwealth v. Walls,_ 592 Pa. 557, 926 A.2d 957, 961 (2007) (describing the standard of review as typically referring to the level of deference to be accorded a lower tribunal's decision.).

based on bias, ill will, prejudice, or partiality. Appellant's Brief at 27 (citing *Simmons v. Simmons*, 723 A.2d 221, 222 (Pa.Super.1998)). Appellant posits that this is not the appropriate standard.

To the contrary, she submits that a *de novo* standard of review, which contemplates an appellate court's independent evaluation of the evidence with independent findings of fact and conclusions of law, is more appropriate for determinations of whether a minor is mature and capable of consenting to an abortion. *See Two Sophia's, Inc. v. Pa. Liquor Control Bd.*, 799 A.2d 917, 922 n. 5 (Pa.Cmwlth.2002) (stating that "[i]n essence, '*de novo* review' means that the reviewing court will reappraise the evidence in the record and has the authority, in the exercise of its statutory discretion, to make independent findings of fact and conclusions of law."). Appellant contends that a less deferential standard of review, such as *de novo*, is warranted due to the constitutional significance of the right involved in a woman's decision to terminate her pregnancy, which, as stated above, is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[11]

11. In its *amicus* brief in support of Appellant, the ACLU elaborates on this point and argues that because a woman's constitutional right to an abortion is at issue, federal constitutional law requires the reviewing court in a judicial bypass case to conduct an independent review of facts and legal conclusions. It relies on the United States Supreme Court's decision in *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), which held that in First Amendment cases involving whether a false statement was made with actual malice, an appellate court was obligated to "make an independent examination of the whole record" to ensure that "the judgment did not constitute a forbidden intrusion on the field of free expression." *Id.* (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 284–86, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). This independent review was necessary to ensure that the particular speech at issue—primarily speech challenged as constituting product disparagement, libel, fighting words, obscenities, or the like—actually falls within the category of speech that possesses no constitutional protection. *Bose*, 466 U.S. at 505, 104 S.Ct. 1949. Such issues were not found to be questions for the trier of fact. According to the ACLU, this rule of independent review is not restricted to First Amendment cases, but should also apply in judicial bypass cases. The ACLU offers no controlling authority establishing, as a matter of federal constitutional law, that individual states are required to apply independent review in judicial bypass

To be more precise, Appellant advocates the adoption of an approach that would afford deference to the trial court's factual findings, but review *de novo* the ultimate maturity/capacity determination. Acknowledging that the distinction between a finding of fact and a conclusion of law in a judicial bypass proceeding is "muddled," Appellant nevertheless proposes that we view the trial court's determination of maturity and capacity as a pure legal conclusion to which an appellate court affords no deference. Appellant's Brief at 28–29. *See In re Jane Doe 2*, 166 P.3d 293, 295 (Colo.App.2007) (stating that in judicial bypass appeals, we "give deference to the trial court's factual findings based on the evidence and to its assessment of the witnesses' credibility, while reviewing *de novo* its resolution of the ultimate legal questions of maturity and best interests").

Accepting this Court's invitation to participate in this appeal, the Attorney General advocates application of the standard of review that comports with that found in other similar areas. It describes such standard as requiring an appellate court to disturb the trial court's findings of fact only if unsupported by the record, exercise *de novo* review over issues of law, and, contrary to Appellant's position, review under an abuse of discretion standard the trial court's ultimate determination as to whether the minor is mature and capable of giving informed consent to an abortion. Brief for Attorney General of Pennsylvania as Amicus at 3. It analogizes a trial court's decision to deny judicial authorization for an abortion to decisions terminating parental rights, granting child custody or adoption, and appointing guardians, all of which are reviewed for an abuse of discretion. *See e.g. In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 886 (1986) (holding that "unless the Orphan's Court abused its discretion or committed an error of law, its findings are entitled to the same weight given a jury verdict."); *In re Peery*, 556 Pa. 125, 727 A.2d 539, 540 (1999) (holding that on review of the denial of a petition for

proceedings. It further offers no examples beyond the distinguishable First Amendment cases to support its position. Accordingly, we decline to hold that independent review is required in judicial bypass cases.

guardianship, a court is bound by the trial judge's findings of fact unless those findings are not based on competent evidence; conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to facts by the lower court).[12]

Upon consideration of the parties' arguments, we agree with the position set forth by the Attorney General and hold that, absent direction in the Act, an appellate court reviewing a denial of a petition for judicial authorization for an abortion should give deference to the facts found by the lower court where they are supported by competent evidence of record; review pure questions of law under the *de novo* standard of review without affording deference to the trial court's legal conclusions, and review under an abuse of discretion standard the trial court's ultimate determination as to whether the minor is mature and capable of giving informed consent to an abortion.

We adopt the abuse of discretion standard to review the trial court's maturity/capacity determination for three reasons. First, contrary to Appellant's position, we do not view the trial court's maturity/capacity determination as a pure question of law, subject to *de novo* review. *See Commonwealth v. Omar*, 602 Pa. 595, 981 A.2d 179, 185 (2009) (providing that an appellate court reviews pure questions of law under a *de novo* standard). Rather, the inquiry of whether a minor is mature enough to determine whether to terminate her pregnancy is fact-intensive and more suitable for deferential review. While the trial court may not be called upon to weigh disputed evidence, given the lack of adversarial parties, the trial court's

12. We have also received an amicus brief filed jointly by the Pennsylvania Family Institute and the Pennsylvania Pro–Life Federation. Advocating adoption of an abuse of discretion standard as suggested by the Attorney General, the amici characterize a trial court's determination regarding a minor's maturity as a factual finding that is, by its nature, inherently subjective. Thus, they contend, appellate courts should afford deference to a trial court's discretionary determinations in this regard. Amici further assert that legislative interest in parental involvement should not be undermined by employment of an appellate standard of review that would routinely grant judicial authorizations. They offer no opinion as to application of the standard to the facts presented, as they were not privy to the confidential record below.

firsthand observation of the minor's demeanor and testimony is an invaluable tool in determining whether the minor's assertions of maturity and capacity are worthy of belief.[13]

Other courts, absent legislative direction to the contrary, have applied a deferential standard of review to the trial court's ultimate finding of maturity/capacity in recognition that trial courts have an advantage over appellate courts in gauging demeanor and assessing credibility of minors who seek judicial authorization for an abortion. *See e.g. Ex Parte Anonymous,* 806 So.2d 1269 (Ala.2001) (holding that a determination of maturity and best interests is one of fact to which deference should be given, therefore, *de novo* review is inappropriate); *In the Matter of R.B.,* 790 So.2d 830 (Miss.2001) (applying an abuse of discretion standard to determine whether the minor had the requisite maturity and capacity to consent to an abortion); *In the Matter of Jane Doe,* 141 Ohio App.3d 20, 749 N.E.2d 807 (2001) (same).

Second, we decline to adopt *de novo* review over maturity/capacity determinations in judicial bypass cases because we have not afforded *de novo* review in other appeals where constitutionally protected family concerns are implicated.[14] For example, as noted by the Attorney General, in reviewing child custody matters, we have emphasized that the reviewing tribunal does not have license "to nullify the factfinding functions of the court of first instance." *Charles v. Stehlik,* 560 Pa. 334, 744 A.2d 1255, 1257 (2000) (citing *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157, 158–59 (1980)). Rather, "an appellate court may not reverse a trial

13. We emphasize, however, that to be of value to a reviewing court, the trial court's assessment of the minor's demeanor and testimony as it relates to the maturity/capacity determination must be conducted within the confines of the Act. This is not a novel concept as the United States Supreme Court in *Bose* acknowledged that even the deferential "clearly erroneous" standard of review "does not inhibit an appellate court's power to correct ... a finding of fact that is predicated on a misunderstanding of the governing rule of law." 466 U.S. at 501, 104 S.Ct. 1949.

14. In *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the United States Supreme Court recognized that "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." *Id.* at 753, 102 S.Ct. 1388.

court's custody order absent a showing that the trial court abused its discretion." *Id.*[15] Similarly, we have applied an abuse of discretion standard of review in cases involving the involuntary termination of parental rights, *In re Adoption of J.J.*, 515 A.2d at 886, and guardianship decisions. *In re Peery*, 727 A.2d at 540. The same deferential standard of appellate review should be applied to decisions denying a minor's application for judicial authorization for an abortion.

Finally, we note that some states which have employed a *de novo* standard of appellate review in judicial bypass cases have done so as part of the legislative scheme. *See e.g.* Neb.Rev. Stat. § 71–6904(6) (providing that "[t]he Supreme Court shall hear the appeal *de novo* on the record and issue a written decision which shall be provided immediately to the pregnant woman, the pregnant woman's guardian ad litem, the pregnant woman's attorney, or any other person designated by the pregnant woman to receive the order."); Tenn.Code Ann. § 37–10–304(g) (providing that "[t]he [judicial bypass] appeal shall be *de novo* to the circuit court for the county in which the juvenile court is located."). As our General Assembly has not chosen to require a *de novo* appeal from the denial of judicial authorization for an abortion, we decline to provide the same absent compelling reason to do so.

 Having determined the appropriate standard of appellate review, we proceed to examine whether the trial court abused its discretion by relying, in significant part, on Appellant's failure to seek parental consent as evidence of her lack of maturity and capacity to provide independent, informed consent for an abortion. We have held that "[a]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is

15. In fact, integral to a custody matter is an evaluation of the best interests of the child, which is reviewed for an abuse of discretion. *Moore v. Moore*, 535 Pa. 18, 634 A.2d 163, 167–68 (1993). The best interests of the minor, which is the alternative basis for judicial authorization under Section 3206(d), likewise benefits from a deferential review.

abused." *Commonwealth v. Selenski,* 606 Pa. 51, 994 A.2d 1083, 1087 (2010) (citing *Commonwealth v. Wright,* 599 Pa. 270, 961 A.2d 119, 142 (2008)). An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion based on the record before it. *Walls,* 926 A.2d at 961. A trial court's exercise of discretion, however, is not unfettered. Otherwise, decisions denying judicial authorization for an abortion would be beyond appellate review, an untenable position considering the plain language of the Act guaranteeing an appeal in such cases, *see* 18 Pa.C.S. § 3206(h) (providing that "[a]n expedited confidential appeal shall be available to any pregnant woman whom the court fails to grant an order authorizing an abortion...."), and, generally, the constitutional right to an appeal guaranteed by the Pennsylvania Constitution. *See* Pa. Const. art. V, § 9 (providing that "There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.").

We begin by examining the statutory framework governing abortions in Pennsylvania. When analyzing a statute, we are guided by the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.* The purpose of statutory construction is to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a). The language employed by the General Assembly is the best indication of its intent. When the words of a statute are clear and free from all ambiguity, the letter of the law is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). With these guidelines in mind, we turn to the statutory language.

Generally, the Act permits a woman to seek an abortion if she has given "voluntary and informed consent" at least 24 hours in advance of the procedure. 18 Pa.C.S. § 3205(a). As the Superior Court recognized in *L.D.F.,* "[t]he nature of the informed consent is set out in the statute in precise terms."

820 A.2d at 716. The Act declares that consent to an abortion is voluntary and informed if a physician or other designated individual has explained to the woman the nature of the proposed abortion procedure and the risks and alternatives "that a reasonable patient would consider material to the decision of whether to proceed with an abortion." 18 Pa.C.S. § 3205(a)(1)(i). A physician or other designated individual must also inform the woman of the probable gestational age of the unborn child and the medical risks associated with carrying the child to term. *Id.* § 3205(a)(1)(ii), (iii).

The Act further requires that a physician inform the woman that the state health department publishes printed materials, which will be provided to her if she chooses to review them. These printed materials describe the unborn child and list agencies offering alternatives to abortion; explain that medical assistance may be available to her; and explain that the father of the unborn child is liable to assist in the support of her child. *Id.* § 3205(a)(2)(i), (ii) & (iii).[16] Absent risk of death to the woman or irreversible impairment of her functions arising from childbirth, and assuming the informed consent provisions are satisfied, the Act permits abortions where the gestational age of a fetus is less than 24 weeks. *Id.* § 3211(a).

Regarding the provisions governing abortions sought by minors, we reiterate that Section 3206 of the Act, entitled "Parental Consent," sets forth the general rule that, absent a medical emergency, a physician shall not perform an abortion upon an unemancipated pregnant woman under the age of 18 years without the informed consent of the pregnant woman and one of her parents. *Id.* § 3206(a). As noted, however, Section 3206(c) provides for the judicial bypass of the parental consent requirement, stating:

(c) PETITION TO COURT FOR CONSENT.—If both of the parents or guardians of the pregnant woman refuse to consent to the performance of an abortion or if she elects

16. The state health department is further required to publish additional printed materials as set forth in Section 3208 of the Act, which are not at issue here.

not to seek the consent of either of her parents or of her guardian, the court of common pleas of the judicial district in which the applicant resides or in which the abortion is sought shall, upon petition or motion, after an appropriate hearing, authorize a physician to perform the abortion if the court determines that the pregnant woman is mature and capable of giving informed consent to the proposed abortion, and has, in fact, given such consent.

*Id.* § 3206(c).

The General Assembly additionally has provided guidance as to the factors a court is to consider in determining whether a minor is mature and capable of giving informed consent to an abortion. The Act directs that "[a]t the hearing, the court shall hear evidence relating to the emotional development, maturity, intellect and understanding of the pregnant woman, the fact and duration of her pregnancy, the nature, possible consequences[,] and alternatives to the abortion...." *Id.* § 3206(f)(4). The court may also consider "any other evidence that the court may find useful in determining whether the pregnant woman should be granted full capacity for the purpose of consenting to the abortion or whether the abortion is in the best interest of the pregnant woman." *Id.*

Appellant argues that the trial court nullified these provisions of the Act by utilizing improperly her failure to seek parental consent as a ground for concluding that she lacked the maturity and capacity necessary to give independent, informed consent. She contends that a minor has an express statutory right not to involve her parents in her decision-making process. She relies on the language of the judicial bypass provision set forth in Section 3206, as well as the statement of legislative intent contained in Section 3202(a) of the Act, which states, in part, that "[i]t is the further intention of the General Assembly to ... protect the right of the minor woman voluntarily to decide to submit to abortion or to carry her child to term." 18 Pa.C.S. § 3202(a). Appellant concludes that her choice to utilize the protections afforded by the statute without parental consultation cannot be used against

her as a basis for denying her application for judicial authorization.

We agree.[17] The Act states with unmistakable clarity that in order for a physician to legally perform an abortion on a minor, the minor must obtain the consent of one parent or, alternatively, obtain judicial authorization. *Id.* § 3206(a), (c). Neither parental consultation nor consent is required if the minor is seeking judicial authorization for an abortion, as the Act expressly permits the minor to elect not to seek the consent of her parents. *Id.* § 3206(c) (permitting judicial authorization for an abortion to be performed on a minor that the court deems mature and capable where "both of the parents or guardians of the pregnant woman refuse to consent to the performance of an abortion or if she elects not to seek the consent of either of her parents or of her guardian"). Indeed, the purpose of a judicial bypass proceeding is to determine whether the minor possesses the maturity/capacity to give independent informed consent, as every minor who seeks judicial authorization for an abortion does so because she lacks or elects not to seek parental consent. Thus, a minor's failure to consult with or obtain the consent of her parent cannot serve as the basis for denying a petition for judicial authorization.

■ A trial court conducting a judicial bypass proceeding must keep in mind that in making a maturity/capacity determination under Section 3206(c), the court is not examining whether abortion is the best choice for the minor, but rather whether the minor is mature enough to make that choice for herself. To ensure consistent application of the law in cases involving the politically charged and controversial issue of abortion rights, the judiciary must respect the General Assembly's policy decision not to require parental consultation prior to a minor obtaining judicial authorization to terminate her pregnancy, and must give effect to those controlling provisions

17. Notably, the Attorney General also agrees that Section 3206(c) does not require parental consent for an abortion to be performed on a minor who the court deems mature and capable of providing informed consent.

of the Act. *See Malt Bevs. Distrib. Ass'n v. Pa. Liquor Control Bd.*, 601 Pa. 449, 974 A.2d 1144, 1154 (2009) (*citing, Union-town Newspapers, Inc. v. Roberts*, 576 Pa. 231, 839 A.2d 185, 194 (2003) (providing that policy considerations do not lie with the courts, but are reserved for the legislative body to resolve)); *see also* 1 Pa.C.S. § 1921(a) (providing that every statute should be construed to give effect to all its provisions). To hold otherwise would leave open the door for result-oriented decisions utilizing the lack of parental consent, which, as stated, is not a disqualifying factor, to justify denial of judicial authorization under the guise of the minor's lack of maturity.[18] Accordingly, we hold that the trial court abused its discretion to the extent that it based its maturity/capacity determination upon Appellant's failure to seek the consent of her parent.[19]

A review of the record indicates that Appellant's failure to consult with her mother about whether to terminate her pregnancy played an integral part in the trial court's determination that she lacked the maturity and capacity to consent to an abortion. *See* Trial Ct. Slip Op. at 20 & 21 (stating that "a minor, such as [Appellant], must attempt to secure the consent of at least one parent" and Appellant "did not put forth any valid, credible and/or believable reason for not seeking her mother's consent"); *id.* at 15 (where the court reasoned that a "minor displays sound judgment and maturity by overcoming fear and anxiety by seeking the guidance and advice of their

18. We respectfully note that, contrary to the dissent's assertion, we impart no improper motive to the trial court's inquiry. *See* Concurring and Dissenting Opinion of Justice Orie Melvin at 4 (stating that "[i]t appears the majority is imparting an improper motive to the trial court's inquiry by concluding that the minor's lack of parental consultation was used against her as the sole basis for the court's decision to deny judicial authorization"). Instead, we merely point out that strict adherence to the mandates of the Act ensures even handed decision-making.

19. We clarify that our holding is not premised on the trial court's inquiry into the reasons why Appellant elected not to seek parental consent for an abortion; such inquiry is within the court's discretion. Rather, our finding of an abuse of discretion is based upon the trial court's reliance upon the failure to seek parental consent as a ground upon which to deny the application for judicial authorization.

[sic] parent(s)/guardian(s), the person or persons most respon-sible for the minor's well[-]being and development."); *see also* N.T. 3/19/2010 (Afternoon Session) at 58 (where the trial court noted that one of its two concerns with Appellant's application was her failure to inform her mother of the proposed abor-tion); *id.* (wherein the trial court stated "it seems to me that in every case if we would allow a minor to use the bypass provision based solely on the representation that their [sic] parent would be disappointed with their [sic] decision, I can't imagine that any parent is going to receive news that their [sic] child has an unplanned pregnancy").

Nevertheless, we readily acknowledge that in making the maturity/capacity determination, the trial court relied upon a myriad of factors in addition to Appellant's failure to consult with her mother. *See supra* pp. 6–8. We believe it unwise to examine the propriety of the trial court's exercise of discre-tion in this regard for three reasons. First, we lack advocacy on this issue and are loath to decide a matter absent an op-portunity to weigh the respective arguments presented by the parties. *See Danville Area Sch. Dist. v. Danville Area Educ. Ass'n,* 562 Pa. 238, 754 A.2d 1255, 1259 (2000) (explaining that *sua sponte* consideration of issues disturbs the process of orderly judicial decision making because it deprives the court of the benefit of counsel's advocacy). Second, considering that Appellant is no longer pregnant, and that the case is technically moot, it would be futile to direct the trial court to reconsider its maturity/capacity determination under the proper statutory framework. Finally, we have already ad-dressed Appellant's primary challenge to the trial court's exercise of discretion, *i.e.,* its reliance upon her lack of paren-tal consultation/consent in denying judicial authorization for an abortion, and have fully answered the specifically designat-ed question raised in Appellant's petition for review. Thus, as noted, we offer no opinion on the trial court's ultimate deter-mination that Appellant lacked the maturity and capacity to consent to an abortion. For the reasons set forth herein, we vacate the order of the Superior Court, which affirmed the trial court's denial of judicial authorization for an abortion,

and refrain from further addressing the trial court's exercise of its discretion in this case.[20]

Justice ORIE MELVIN files a concurring and dissenting opinion.

Justice ORIE MELVIN, concurring and dissenting.

I join the majority's articulation of the appropriate standard of review that an appellate court should apply to appeals from the denial of judicial authorization pursuant to section 3206(c) of Pennsylvania's Abortion Control Act ("Act"), Act of June 11, 1982, P.L. 476, No. 138 (codified as amended at 18 Pa.C.S. §§ 3201–3320). I disagree, however, with the majority's conclusion that the trial court somehow misapplied the mandate of section 3206(c) by inquiring into the reasons why the minor elected not to seek the consent of either parent and thereby abused its discretion.

Our General Assembly has placed "a supreme value upon protecting human life" and has expressed its interest in the "right of a minor woman voluntarily to decide to submit to abortion or carry her child to term." 18 Pa.C.S. § 3202(a) and (b)(4). Additionally, it has expressed an interest in protection of minors and parental involvement through obtaining the informed consent of both. *See* 18 Pa.C.S. § 3206(a) ("[A] physician shall not perform an abortion upon [a minor] unless, ... he first obtains the informed consent both of the pregnant woman and one of her parents."). Likewise, the United States Supreme Court has repeatedly recognized the importance of parental involvement in a minor's decisions, noting:

The unique role in our society of the family, the institution by which "we inculcate and pass down many of our most cherished values, moral and cultural," *Moore v. East Cleveland,* 431 U.S. 494, 503–504, 97 S.Ct. 1932, 52 L.Ed.2d 531

**20.** Contrary to the dissent's assertion that we are usurping the trial court's function of making credibility determinations, *see* Concurring and Dissenting Opinion of Justice Orie Melvin at at 365 n. 2, 33 A.3d 629 n. 2, we do not address such determinations, but rather conclude, as a matter of law, that the failure to seek parental consent cannot serve as the basis for the denial of judicial authorization for an abortion.

(1977) (plurality opinion), requires that constitutional principles be applied with sensitivity and flexibility to the special needs of parents and children. We have recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing.

*Bellotti v. Baird,* 443 U.S. 622, 634, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (plurality opinion).

The High Court further noted:

As immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, a State reasonably may determine that parental consultation often is desirable and in the best interest of the minor. It may further determine, as a general proposition, that such consultation is particularly desirable with respect to the abortion decision—one that for some people raises profound moral and religious concerns. As MR. JUSTICE STEWART [stated]:

There can be little doubt that the State furthers a constitutionally permissible end by encouraging an unmarried pregnant minor to seek the help and advice of her parents in making the very important decision whether or not to bear a child. That is a grave decision, and a girl of tender years, under emotional stress, may be ill-equipped to make it without mature advice and emotional support. It seems unlikely that she will obtain adequate counsel and support from the attending physician at an abortion clinic, where abortions for pregnant minors frequently take place.

*Id.* at 640–41, 99 S.Ct. 3035 (internal quotation marks, citation and footnotes omitted).

In denying judicial authorization in this case, the trial court's searching inquiry appropriately relied upon a multitude of factors and applied a totality of the circumstances analysis to reach its conclusion that the minor was not "ma-

ture and capable" of giving informed consent independently as required by section 3206(c) of the Act. As part of its reasoning, it took into consideration the minor's explanation for electing to not seek her mother's consent, and it also underscored that her post-petition compliance with section 3205(a)(2) of the Act reflected poorly on her ability to provide informed consent to the procedure. The Superior Court affirmed the trial court's denial of judicial authorization, finding no abuse of discretion. I agree with the Superior Court's determination.

While I acknowledge, and I further believe, the lower courts also recognized, that section 3206(c) does not require parental consent or even parental consultation, such a reading should not be equated with a complete prohibition of any consideration of the reasons for electing not to seek parental consent. Rather, I believe the Act contemplates a searching inquiry into the minor's maturity and capacity to give informed consent, which reasonably includes the minor's reasons for seeking judicial authorization in lieu of parental consent. As noted by the majority, the Act specifically grants the judge the authority to consider "any other evidence that the court may find useful in determining whether the pregnant woman should be granted full capacity for the purposes of consenting to the abortion or whether the abortion is in the best interest of the pregnant woman." 18 Pa.C.S. § 3206(f)(4). I believe that such an inquiry is relevant, as that information serves to assist the court in determining the minor's emotional development and level of maturity as contemplated by section 3206(f)(4). While the minor has a statutory right not to involve her parents in the decision-making process, the impetus supporting that decision can, depending upon her reasons, reflect either positively or negatively upon her maturity and capacity to give informed consent.[1]

I further distance myself from the majority's acceptance of Appellant's argument that sections 3206(c) and (f)(4) of the Act were "nullified" by the trial court "utilizing **improperly** her

---

1. As, for example, when she is truly afraid to inform her parents because of an abusive situation at home versus a desire for secrecy or to avoid embarrassment.

failure to seek parental consent as a ground for concluding that she lacked the maturity and capacity necessary to give . . . informed consent." Majority Opinion, at 358, 33 A.3d at 627 (emphasis added). It appears the majority is imparting an improper motive to the trial court's inquiry by concluding that the minor's lack of parental consultation was used against her as the sole basis for the court's decision to deny judicial authorization. *See* Majority Opinion, at 360, 33 A.3d at 628 ("To hold otherwise would leave open the door for result-oriented decisions utilizing the lack of parental consent, which, as stated, is not a disqualifying factor, to justify denial of judicial authorization under the guise of the minor's lack of maturity."). Contrary to the majority's assessment, it is my considered perspective that the record does not support the majority's conclusion that the trial court "[relied] upon the failure to seek parental consent as a ground upon which to deny the application for judicial authorization." *See* Majority Opinion, at 360 n. 19, 33 A.3d at 628 n. 19.[2] Rather, it was her **reason** for not seeking parental consent and not **the fact** that she elected not to seek consent that properly formed but one of many factors bearing upon the trial court's maturity assessment.[3] The trial court simply made a credibility determination in rejecting her proffered explanation, which is a matter properly within its purview.[4] Accordingly, I would find that the trial court engaged in a thorough and reasoned approach

2. The majority, despite its protestations to the contrary, converts a credibility determination into an abuse of discretion by presuming that the trial court relied upon a failure to seek parental consent.

3. I further note that appellate review is not available in those cases where judicial authorization is granted to the minor. *See* 18 Pa.C.S. § 3206(h) ("An expedited confidential appeal shall be available to any pregnant woman whom the court **fails** to grant an order authorizing an abortion. . . .") (emphasis added). The scarcity of appellate review of a judicial bypass petition is apparently attributable to the fact that the overwhelming majority of these petitions are granted. Consequently, the trial court's determination of the credibility and maturity of the minor in those cases where it grants the petition to have an abortion will escape the same scrutiny that this case has now received. This reality further highlights the need for trial judges to engage in meaningful and objective evaluations of requests for judicial authorizations and for appellate courts to refrain from re-weighing their credibility determinations, as I believe the majority does here, in those apparently few cases where the authorization is denied.

4. Respectfully, I believe the majority takes the trial court's comments in this regard out of context. *See* Majority Opinion, at 360, 33 A.3d at

366

to the difficult task imposed by section 3206(c), and it did not abuse its discretion.

628. Specifically, with reference to the statement, "a minor, such as [Appellant], must attempt to secure the consent of at least one parent," the court was merely offering an alternate rationale based upon its interpretation of the United States Supreme Court's decision in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), it did not form the basis for its initial and primary holding. Rather, the court was just pointing out the fact the consent of one parent was not obtained in this case for whatever relevance an appellate court would attribute to that fact. *See* Trial Ct. *slip op.* at 19–21. I view the trial court's other comments as properly explaining why the minor's reasons for failing to involve her mother lacked credibility and, therefore, contributed to its finding of immaturity.