J-S22043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: YORK COUNTY CHILDREN AND YOUTH | No. 1922 MDA 2016 |

Appeal from the Order Entered October 25, 2016
in the Court of Common Pleas of York County
Juvenile Division at No.: CP-67-DP-0000220-2016

BEFORE: SHOGAN, J., MOULTON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JULY 06, 2017**

York County Office of Children, Youth, and Families ("CYF", "YCOCYF", or the "Agency"), appeals from the status review order entered on October 25, 2016, directing CYF, as a sanction for civil contempt of the trial court's August 16, 2016, order, to reimburse N.T.-C., ("Paternal Grandmother"), the paternal grandmother of the subject child, K.G., ("Child") (a female born in 2001), in the amount of $540 for the costs of an abortion Child underwent. We vacate the order, insofar as it finds CYF in contempt, and imposes the $540 sanction on CYF.

---

[*] Retired Senior Judge assigned to the Superior Court.

On July 26, 2016, CYF filed a motion for emergency protective custody with regard to Child after an alleged altercation between Child and her mother, A.G.-S., (Mother), along a roadside. On July 27, 2016, the trial court entered an order placing Child in the protective custody of CYF. A master held a shelter care hearing on July 28, 2016. On August 3, 2016, the trial court entered the master's recommendation for shelter care and its shelter care order, dated July 28, 2016.[1]

In the meantime, on August 2, 2016, CYF filed a petition to adjudicate Child dependent. On August 16, 2016, the trial court held a hearing on the dependency petition. CYF was represented by Attorney Kristina Bange. Gilliam Woodward, the attorney appointed to serve as guardian *ad litem* ("GAL") for Child, was also present. Father and Mother were present in the courtroom, as well. CYF presented the testimony of Seth Reed, a police officer for Hellam Township who responded to the call about the roadside disturbance between Mother and Child on July 25, 2016. N.T., 8/16/16, at 13-14. CYF then presented the testimony of Kalene Leh, the caseworker for CYF assigned to Child's case. *Id.* at 21-22. Attorney Woodward cross-examined both witnesses.

At the close of the testimony, the trial court stated:

---

[1] On August 10, 2016, the trial court again entered the July 27, 2016 order for emergency protective custody of Child.

- 2 -

THE COURT: I do make the finding that the child is dependent as that term is defined by the [Juvenile Act, 42 Pa.C.S. § 6302]. Based on the allegations outlined in the petition, we find that the evidence is credible, that there was some sort of altercation that occurred, that [F]ather has indicated that he is not a resource for his daughter.

She has some delinquency matters pending in Lancaster County, and based on all the evidence presented, we do find that she is a dependent child. We do find that it is appropriate to have her placed with the paternal grandparents. They are interested in serving as foster parents and will complete appropriate paperwork in order to be approved.

Goals shall be set forth and established for both parents. The primary goal will be reunification. We do make the concurrent goal of adoption. It is hoped that she can achieve reunification within a reasonable period of time, but the agency shall pursue other permanent goals. In the event that permanent legal custodianship is more appropriate, we can revisit that at the next review period – review hearing.

We do direct that the family team meeting marked as Exhibit 1 will be incorporated into the record and that the agency assist the family in securing appropriate services for the child, noting that she is going to be residing in Lancaster County.

*We do authorize the GAL – the GAL to request and do direct the agency to schedule an evaluation for the child pursuant to 32 Pa.C.S.A. Section 31 – I'm sorry, 3201. [sic] [18 Pa.C.S.A. § 3201 (Abortion Control Act)].*

A copy of this Order adjudicating the child dependent will be provided to all parties in court today. We remind the parents of their right to be represented by counsel.

This matter will be reviewed every 90 days. They are entitled to counsel of their choosing. They are also entitled to file an appeal of this [c]ourt's decision within 30 days of today's date.

Okay.

Once you receive a copy of the Order, you can step out.

ATTORNEY BANGE: Your Honor, I didn't hand up the Court-ordered services. I think it was referenced in the proposed order.

THE COURT: Were there any changes to the Court-ordered services and conditions?

We do incorporate the Court-ordered services and conditions attached hereto and the provisions contained therein.

There is a change to the medical and educational rights. It's granted to the agency.

Attorney Bange, I've granted medical and educational rights to the agency. We can revisit that at the next hearing.

N.T., 8/16/16, at 42-45 (emphasis added).

On August 16, 2016, the trial court entered an adjudication finding Child dependent, and an order of disposition, which provided as follows:

AND NOW, this 16th day of August , 2016, after consideration of the petition presented by the York County Children and Youth Services Agency, it is ORDERED that the child is found, by clear and convincing evidence, to be a Dependent Child pursuant to the Pennsylvania Juvenile Act at 42 Pa.C.S. § 6302 'Dependent Child'.

**DEPENDENT CHILD PURSUANT TO**

(1) The child is without proper care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals.

**FINDINGS OF FACT**

Findings of fact are as follows: The minor child, [K.G.,] is fifteen years of age, and had been residing with her mother, [A.G.-S]. On July 25, 2015, York County Office of Children, Youth & Families was advised of a domestic dispute between the mother and the minor child in a motor vehicle. Allegations received were that the mother pulled the car off to the side of the road and physically assaulted the child. The mother allegedly left the

- 4 -

child along the roadside on the Route 30 Bridge between Lancaster County and York County. York County Office of Children, Youth & Families attempted to implement a safety plan with the family, however, the situation escalated into a verbal altercation which resulted in the York City Police Department being dispatched to the home. The minor child was residing with the paternal grandmother, [N.T.-C.], in Lancaster County, Pennsylvania, throughout the school year and was spending the summer months with her mother and maternal grandmother. The minor child is currently on probation in Lancaster County, Pennsylvania, on a charge of Hindering Apprehension[,] which she received in May, 2014. On May 11, 2016, the minor child received three new charges through Lancaster County Juvenile Probation, two counts of Disorder [sic] [Co]nduct, and one count of Simple Assault. The child was placed on house arrest and an ankle monitor. The child cut off the ankle monitor and since that time has been residing with her mother in York County, Pennsylvania. The mother was recently released from Muncy State Correctional Institution. Father [T.S.] resides in Mooresville, North Carolina. The paternal grandparents, [N.T.-C.] and [R.C.], have come forward as a placement resource for the child. The paternal grandparents have been approved as emergency caregivers for the child.

**CHILD REMOVED FROM HOME**

The Court finds that based upon the findings of abuse, neglect and/or dependency of the minor child, it is in the best interest of the child to be removed from the home of [A.G.-S.] and [S.T.] Relationship: Mother and Father.

**REASONABLE EFFORTS**

Further, the [c]ourt hereby finds that to allow this child to remain in the home would be contrary to the child's welfare, and that [p]reventive services were not offered due to the necessity for emergency placement. The lack of services was reasonable under the circumstances. This level of effort was reasonable due to the emergency nature of the situation, safety considerations, and circumstances of the family.

**CUSTODY/PLACEMENT**

PLACEMENT – The Child is to be placed, by the agency, in emergency caregiver placement with the paternal grandparents, [N.T.-C.] and [R.C.], pending approval for participation in the Kinship Program.  The Child's placement is the least restrictive placement that meets the need of the Child and there is no less restrictive alternative available, in that due to the father residing out-of-state, issues of domestic violence between mother and child, and the paternal grandparent willing to be a resource for the child, placement with the paternal grandparents as emergency caregivers is the least restrictive alternative available.

CONDITIONS – The dependent child is subject to the following conditions – see Court-Ordered Services/Conditions Appendix incorporated herein by reference.

**CURRENT PLACEMENT – Child's Safety**

The child is safe in the current placement setting.

**CURRENT PERMANENT PLACEMENT PLAN**

The current placement goal for the child is return to parent or guardian.  The projected date by which the goal for the child might be achieved is: within six to twelve months.
The following [s]ervices are necessary to achieve the permanency plan – see Court-Ordered Services/Conditions Appendix incorporated herein by reference.

**EDUCATION/HEALTH/EVALUATIONS**

The following is necessary to ensure the stability and appropriateness of the Child's education: the minor child shall attend Phoenix Academy, Lancaster County, Pennsylvania, for the upcoming 2016-2017 school year.

**PROGRAMS/INITIATIVES**

The court recognizes the following initiatives or programs have been or will be used:

Family Finding

Family Group Decision Making with individual and family.

**FAMILY FINDING**

The court orders the Agency to engage and continue in family finding until further order of court.

***MEDICAL CONSENT***

*It is further ORDERED that if the child is in the legal custody of the county agency as defined by the Juvenile Act at 42 Pa.C.S. §§ 6301-6355, the County Children and Youth Services Agency has the authority to consent to routine treatment of the child.*

**FINANCIAL SUPPORT**

It is further ORDERED and DECREED that the individual(s) legally responsible for the financial support of the child shall pay support to the county in an amount as determined by the Family Court Division.

**INDIAN STATUS**

The child is not Indian as defined in 25 U.S.C. § 1903(4), and the Indian Child Welfare Act does not apply to these proceedings.

**FINDINGS/ORDERS**

THE COURT FURTHER FINDS:

The Concurrent Goal for the minor child is: Adoption.

Father does acknowledge that the child is dependent. He believes she requires services that he is not able to secure and[,] due to his work schedule, he is not available for his daughter. Maternal grandmother was approached to establish a safety plan and further disputes erupted. After the child was placed at YDC, a family team meeting was held and the family identified the paternal [grand]parents as an appropriate placement for the child. The parties agreed that the child has mental health concerns that need to be addressed. All parties also agreed that the child would reside with the paternal grandparents.

Evidence was presented that there was a physical altercation between the child and her mother on the Wrightsville Bridge. Mother left the child on the bridge and drove away. Two Wrightsville police and Officer Reed were called. She [Child] was evaluated by EMS at the Rutters and scratches were found on her shoulders. Mother was charged with endangering the welfare of a child, simple assault and harassment. She remains incarcerated at this time.

*Medical and educational rights: Children Youth and Families is granted medical and educational rights.*

*THE COURT FURTHER ORDERS:*

*CYF shall immediately make a 32 Pa.C.S.A. § 3201 medical appointment as requested by the GAL and the GAL is authorized to represent the child in an action pursuant to 32 Pa.C.S.A. § 3201 et seq[.,] specifically § 3206(c). [sic]*

*CYF shall notify Lancaster County Juvenile Probation of the child's placement. The paternal [g]randparents shall cooperate with CYF and Lancaster County Juvenile Probation and ensure that the child attends all scheduled appointments and hearings. They shall cooperate with services and ensure that the child is immediately enrolled in school in the district where the grandparents reside and shall attend Phoenix Academy.*

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

Trial Court Adjudication and Disposition Order, 8/16/16, at 1-3 (emphasis added).

The Appendix to the August 16, 2016 Adjudication and Disposition Order provided, in pertinent part:

**COURT-ORDERED SERVICES/CONDITIONS:**

**AGENCY'S RESPONSIBILITIES:**

The Agency shall, at its earliest opportunity, develop a case plan which shall implement the goal, and which is to [be] accomplished as soon as practical.

The Agency shall assist in providing referrals to appropriate agencies so that the persons named herein are able to timely obtain services set forth in this ORDER.

*The Agency shall provide to the persons who are directed to obtain services reasonable assistance to obtain necessary financing for the services, HOWEVER, unless the Agency expressly assumes financial responsibility, the Agency shall NOT BE LIABLE to pay for the services provided to any individual.*

* * *

**MEDICAL AND EDUCATIONAL RIGHTS:**

We hereby grant to CYF the right and authority to make appropriate and necessary decisions concerning the education of the minor(s), including, if necessary, the decision to enroll the minor(s) in an appropriate school district, special school, special classes, and the authority to participate in and approve any individualized education plan for a minor.

*We hereby grant to CYF the right and authority to make reasonable and appropriate medical decisions for the minor(s), including the authority to consent to emergency and long-term medical treatment. This authority does not grant the authority to make decisions contrary to sound medical opinion or advice, nor does this authority grant the right to direct that medical care shall be withheld from a minor.*

* * *

Appendix to Trial Court Adjudication and Disposition, 8/16/16, at 1, 3

(emphasis added).

On August 29, 2016, Attorney Woodward, the GAL, filed a motion to modify the August 16, 2016 order. In the motion, the GAL stated that, in the August 16, 2016 order, Child was adjudicated dependent, and physical

- 9 -

and legal custody were transferred to CYF, as were medical and educational rights. The GAL alleged that CYF had expressed reluctance to arrange and attend certain medical appointments as ordered in the August 16, 2016 order; however, Paternal Grandmother was willing to schedule and attend all medical appointments on behalf of Child. The GAL requested that medical and educational rights be transferred to Paternal Grandmother. The GAL indicated that CYF was in agreement with such transfer, as was Father, but the GAL had been unsuccessful in contacting Mother about the requested transfer. Thus, the GAL requested the trial court to modify the August 16, 2016 order to grant medical and educational rights to Paternal Grandmother.

On October 25, 2016, the trial court held the 90-day status review hearing. Child was present with the GAL. Mother and Paternal Grandmother, Child's emergency caregiver, were present. N.T., 10/25/16, at 2. Attorney Wanda Neuhaus, counsel for CYF, and Kate Wilhelm, the assigned caseworker, were also present. *Id.*

During the status review hearing, Attorney Woodward stated that Child would like to return to Mother's home. N.T., at 23-24. Attorney Woodward then stated the following:

> *The other thing I wanted to bring up is Grandmother did pay for [Child] to have a medical procedure and the Agency will not reimburse her without a Court Order. I would request the Court order Children and Youth to reimburse Grandmother, since she went out of her way to ensure that the medical procedure occurred in a timely manner after the Agency refused to do so.*
>
> *THE COURT: How much did you pay for the medical procedure?*

- 10 -

*PATERNAL GRANDMOTHER: $540.*

*THE COURT: You have 14 days to reimburse.*

*ATTORNEY NEUHAUS: May we approach?*

*THE COURT: There's no approaching. I directed the Agency to make the appointment. They refused to make the appointment. It is the Agency's lack of follow through that has caused [Paternal Grandmother] to outlay the money, and the Agency is paying her back.*

*Had they made the arrangements for the medical appointment and gave [sic] some other information and at least complied with my order, I would have been sympathetic for the Agency, but they're paying her back. I don't care what it was for. They're paying her back, the [$]540. If you want to take that up on appeal, be my guest. I am not discharging jurisdiction. You have 14 days to come up with the money somehow.*

I'm not discharging jurisdiction. I would consider returning her to her [m]other if there are certain safeguards and services in place, so what are those services? That Mother indicates she can get the counseling initiated immediately? I don't agree. You can't play the game of going back and forth.

I know you've both accommodated her, but you see where that has gotten her. You see that the boy is in Lancaster. I don't think it's appropriate, based on what you're telling me, to allow her to return to Lancaster where it's easy to fall back into the pattern of violating curfew.

She has to have responsibility, because the next thing you know, she's going to violate probation, and then she will be in a more secure setting.

There's a more lax attitude, I would say, with regard to restrictions at times on the dependency side. We can be very strict on the dependency side. But when you get to the delinquency side, I have no control over that case. That is in another jurisdiction, and she's subject to the conditions of that jurisdiction.

* * *

> *I'm finding the Agency in contempt of the Court Order for its complete lack of follow through with the directives of this [c]ourt. Particularly, as it relates to the medical care of the child, it causes me concern about the Agency and some caseworkers, not Ms. Wilhelm, but their ability to do their job. And apparently the caseworker is no longer with the Agency or I would have addressed it directly with her.*
>
> As it is, the dependency shall continue. Legal and physical custody shall remain with York County Children and Youth. Placement shall be at the York County Development Center until such time as [Mother] is able to secure services in her home upon enrollment in an appropriate educational setting. With the start of in-home services and counseling, the child can be removed – can be moved to Mother's care with a modification of placement. That petition being submitted to chambers.
>
> I do now transfer medical and educational rights to be shared between York County Children and Youth and Mother. Both shall make appropriate decisions regarding the medical and educational care of the child.

* * *

N.T., 10/25/16, at 25-29 (emphasis added).

In the October 25, 2016 status review order, the trial court stated:

**REASON FOR HEARING**

This Status Review Hearing is being held to address the status of the minor child's placement and progress of all parties.

**REVIEW OF SERVICES**

The services ordered at the dispositional hearing pursuant to Rule 1512 have been put into place by the County Children and Youth Services Agency ('Agency').

**CHILD'S SAFETY**

- 12 -

**The child is safe in the current placement setting.**

**ORDER OF COURT – On the basis of the above findings, IT IS HEREBY ORDERED THAT:**

**FURTHER FINDINGS**

The court further finds:

Mother: The mother reports that she graduated from Shelly truck driving school and continues to receive services through OVR. She resides with her mother in York. Mother does not believe that the child is applying herself. The mother stated that she is a resource for her daughter and that she is now willing to work with services. The caseworker is making a referral for a Catholic Charities team for mother.

Father: The father has had no recent contact with YCOCYF. The caseworker has left messages. Mail was sent to [F]ather's address and was returned.

Child: The child is enrolled in Phoenix Academy in Lancaster County schools. Her grandparents are not sure if they can keep the child in their care. She was initially on house arrest and she did well. However, once she was removed from home monitoring, her behavior deteriorated. She goes out late at night in violation of the curfew. They believe that she would be better served in her mother's care.

She continues to have issues at school. She has had bad interaction and has walked out in class. Juvenile Probation remains involved. She was adjudicated delinquent in Lancaster County and sentenced to probation.

She was directed to attend the Pulse program at LCYIC, attend individual counseling and cooperate with York County CYF.

Review of Services: The services have NOT been put in place as directed. The agency has failed to refer for family based or youth advocate services.

Clear and convincing evidence has been presented to find that it is contrary to her welfare to remain in the care of her mother and grandmother until services can be put in place.

The Court further finds that the agency has failed to comply with the order for adjudication and is in contempt of the court order.

**FURTHER ORDERS**

IT IS FURTHER ORDERED THAT:

The adjudication of dependency of the minor child, [K. G.], shall continue.

*The agency shall immediately, and within 14 days, reimburse [Paternal Grandmother] $540.00. [T]he court further transfers placement of the child to York County Youth Development Center until services can be put in place in Mother's home. The [c]ourt hereby transfers medical and educational rights to CYF and Mother. They shall share in making appropriate medical and educational decisions for the child until further order of court.*

The child shall immediately be enrolled in school in York County in an appropriate educational setting. Upon enrollment in school, the start of an inhome team and counseling, the child may return to the care of her mother with ongoing services being provided to the family.

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

Status Review Order, 10/25/16, at 1-2 (emphasis added).

In its brief on appeal, CYF raises two issues, as follows:

1. Did the Trial Court err in ordering a Governmental Child Welfare Agency to reimburse the minor's grandmother the amount of out-of-pocket costs paid by the Grandmother for the performance of an abortion for a dependent minor?

2. Did the Trial Court err in making a finding of contempt against the Child Welfare Agency when: (a) there was no notice to the Child Welfare Agency of the allegations of contempt; (b) there was insufficient evidence that the Child Welfare Agency was in contempt; and (c) there was insufficient evidence that the amount ordered to be paid to Paternal Grandmother represented

damages sustained by Paternal Grandmother by reason of the Agency's conduct in failing to follow the court's directive?

CYF's Brief, at 5.

CYF first argues that the trial court erred in ordering CYF, a governmental child welfare agency[,] to reimburse Paternal Grandmother the amount of her out-of-pocket costs for the performance of an abortion on Child. CYF states as follows:

> York County Office of Children, Youth and Families is a governmental entity created pursuant to the Child Protective Services Law. 23 Pa.C.S.A. § 6302(b). As such, it is funded with public funds from the Federal Government, the Commonwealth of Pennsylvania and the County Government. State law provides that no public funds "shall be expended by an [sic] State or local government agency for the performance of an abortion." 62 P.S. § 453. It is noted that there is an exception to this prohibition, if the abortion is needed to protect the health of the [m]other or when the pregnancy is caused by rape or incest. 62 P.S. § 453. These circumstances were not proved at the hearing. The [trial court's] Order to reimburse the Paternal Grandmother for costs of an abortion violates both the Pennsylvania Constitution and the law of the Commonwealth.
>
> Further, the purpose of the local child welfare agency, such as YCOCYF, is to: "establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse," and to provide services "to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life." 23 Pa.C.S.A. § 6302(b). The Juvenile Act governs both the county child welfare agency and the Juvenile Court and provides as the purpose: "to provide for the care, protection, safety and wholesome mental and physical development of children". . . . 42 Pa.C.S.A. § 6301(b). Throughout [t]he Juvenile Act, the Court is charged with protecting the health, safety, protection, and physical, mental or moral welfare of the child. 42 Pa.C.S.A. § 6301 et seq. It would be contrary to the purposes of both the Child Protective Services Law[, 23 Pa.C.S. § 6301 *et seq.*,] and [t]he Juvenile Act[, 42 Pa.C.S. § 6301 *et seq.*,] for the Child

- 15 -

Welfare Agency to fund and promote abortions. By ordering the Agency to reimburse [Paternal] Grandmother for this cost, the [trial court] has compromised these statements of purpose - to protect children, even unborn children.

CYF's Brief, at 11-12.[2]

In its second claim, CYF argues as follows:

There are two bases to find that the Trial Court erred in finding YCOCYF in contempt of the [trial court's] Orders - one procedural and one based upon lack and insufficiency of evidence.

Firstly, there was no notice provided to YCOCYF regarding the allegations of contempt in general and specifically. While neither [t]he Juvenile Act nor the Rules of Dependency Court Procedure provide specific procedure for a finding of contempt, the requirement of notice is basic to all legal provisions regarding contempt. *See* 23 Pa.C.S. § 5401 and 231 Pa.Code Rule 1915.12 (custody contempt); 234 Pa.Code Rule 140 (contempt proceedings before Magisterial District Judge): 42 Pa.C.S. § 4136.

All of these rules and statutes require that a person accused of contempt of a court order be provided notice of the accusation of contempt in general and also be provide notice of the specific acts that are the basis for the allegation of contempt. The purpose of the notice requirement is to allow the accused the opportunity to make a defense. No such notice was provided in this case. As a result, YCOCYF did not have the opportunity to prepare a defense and/or have the necessary witnesses present to defend these allegations. Therefore, this finding was made without a full and fair hearing.

Secondly, there is insufficient evidence to support a finding of contempt. "Because contempt is an extraordinary remedy

_____

[2] In support of its constitutional argument, CYF cites Article 3 of the Pennsylvania Constitution, which provides, "No money shall be paid out of the treasury, except on appropriations made by law. . . ." CYF's Brief, at 15 (citing Pa. Const. Art 3, § 24).

and because it exposes the offending party to fines or punishment,. . ., it is strictly interpreted." By a preponderance of the evidence, the testimony must show that the failure to comply with the order was "volitional" and with "wrongful intent". ***Harcar v. Harcar***, 982 A.2d 1230, 1235 (Pa. Super. 2009); ***Barrett v. Barrett***, 368 A.2d 616, 621 (Pa. Supreme 1997). The mere showing of noncompliance or even misconduct is not sufficient. ***Lachat v. Hinchcliffe***, 769 A.2d [481, 488 (Pa. Super. 2001)].

In the case at bar, there is insufficient evidence to support a finding of contempt. With regard to the medical appointment, there was positively no evidence that the Agency failed to act; there is only evidence that the [Paternal Grandmother] was willing to act and did act. With regard to providing services, such as therapy and family-based services, the evidence shows unequivocally that the caseworker did make multiple attempts regarding these services. The family did not want to be involved in the in-home family-based services; therefore, the Agency made numerous efforts to work through the geographical barriers to individual therapy. When it became apparent that the child was not going to stay in Lancaster County (the day or two before the hearing), and would potentially return to York County with her [m]other, the Agency immediately made a referral to Catholic Charities for a Family-Based Team to work with Mother and K.G. Evidence was also provided that the caseworker maintained contact with the Lancaster County Juvenile Probation Officer [("JPO")] (as required by the Court Order of August 16, 2016) and that as a result of the difficulties in obtaining individual therapy, JPO enrolled K.G. in the PULSE program. These facts do not support a finding of willful, volitional action with bad intent.

Further, even if there was a failure to act [on the part of CYF] in scheduling the medical consultation associated with the Abortion Control Act, there was no loss or out of pocket expense to the Paternal Grandmother. Such a medical appointment can be paid for with public funds and would have been covered by Medical Assistance. It is the abortion itself which would not have been covered and which would have caused out of pocket expense to the Paternal Grandmother. YCOCYF was not (and could not have been) ordered to pay for the abortion. Therefore, there is no connection between the alleged failure to follow the court order and the reimbursement of $540.00.

- 17 -

CYF's Brief, at 12-14.

The Pennsylvania Supreme Court recently set forth our standard of review in a dependency case as follows.

> "The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, 608 Pa. 9, [27], 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

*In Interest of: L.Z.*, *A Minor Child*, 641 Pa. 343, 360, 111 A.3d 1164, 1174 (2015).

Section 6302 of the Juvenile Act defines a "dependent child" as:

[a] child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.

In *In re G., T.*, 845 A.2d 870 (Pa. Super. 2004), this Court clarified the definition of "dependent child" further.

> The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

- 18 -

***Id.*** at 872 (internal quotations and citations omitted); ***see also In re J.C.***, 5 A.3d 284, 289 (Pa. Super. 2010). Additionally, we note that "[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." ***G., T.***, 845 A.2d at 872.

With regard to a dependent child, in ***In re D.A.***, 801 A.2d 614 (Pa. Super. 2002) (*en banc*), this Court explained:

> [A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

***Id.*** at 617.

Regarding the disposition of a dependent child, section 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child.

Section 6351(e) of the Juvenile Act provides in pertinent part:

**(e) Permanency hearings.—**

- 19 -

(1) [t]he court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan in a manner appropriate to the child's age and maturity. . . .

(2) If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child has been adjudicated dependent, the court shall then determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the child's parent, guardian or custodian or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as provided in paragraph (3).

* * *

42 Pa.C.S. § 6351(e).

Section 6351(f) of the Juvenile Act prescribes the pertinent inquiry for the reviewing court:

**(f) Matters to be determined at permanency hearing.-**

At each permanency hearing, a court shall determine all of the following:

(1)    The continuing necessity for and appropriateness of the placement.

(2)    The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

- 20 -

(3)    The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4)    The appropriateness and feasibility of the current placement goal for the child.

(5)    The likely date by which the placement goal for the child might be achieved.

(5.1)    Whether reasonable efforts were made to finalize the permanency plan in effect.

(6)    Whether the child is safe.

(7)    If the child has been placed outside the Commonwealth, whether the placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.

* * *

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

    (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

    (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

    (iii) the child's family has not been provided with necessary services to achieve the safe return to

the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

* * *

**(f.1) Additional determination.** — Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(5) If and when the child will be placed in another living arrangement intended to be permanent in nature which is approved by the court in cases where the county agency has documented a compelling reason that it would not be best suited to the safety, protection and physical, mental and moral welfare of the child to be returned to the child's parent, guardian or custodian, to be placed for adoption, to be placed with a legal custodian or to be placed with a fit and wiling relative.

**(f.2) Evidence. –** Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

**(g) Court order.— On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.**

* * *

42 Pa.C.S. § 6351 (some emphasis added).

In its Pa.R.A.P. 1925(a) Opinion, the trial court stated as follows:

[T]he [c]ourt does hereby adopt its Status Review Order October 25, 2016 as the place on the record where the reasons for the decision are found and supplements as follows:

This Court considered the credible evidence presented at the Adjudication Hearing held on August 16, 2016, the Status Review Hearing held on October 25, 2016, and the evidence admitted into the record. Appellant argues that the [c]ourt abused its discretion by ordering the Agency to reimburse the minor child's Paternal Grandmother, [N.T.-C.], the amount of $540.00, reflecting the out-of-pocket costs paid by Grandmother regarding the subject minor child, [K.G].

At an Adjudication hearing held on August 16, 2016, the Court directed[1], inter alia, that the Agency to [sic] schedule an 'evaluation for the child' pursuant to the Abortion Control Act. Hr'g Tr. 44:1 (August 16, 2016)(emphasis added). The [c]ourt also indicated that the GAL could represent the minor child in subsequent related proceedings "based on information obtained as a result of that evaluation". Hr'g Tr. 44: 3-4 (August 16, 2016). The [c]ourt further directed the Agency to refer the family for Family Based Services and Youth Advocate. The Agency then willfully refused to schedule a medical appointment for the minor in direct contradiction of the [c]ourt's directive.

- 23 -

The GAL, in its Motion to Modify Order of August 16, 2016[2], requested this [c]ourt to transfer Medical and Educational rights to Paternal Grandmother due to the Agency's "reluctance to arrange and attend certain medical appointments as Ordered on August 16 2016."[3]  The [c]ourt then determined that it was in the best interest of the child to transfer medical rights to Paternal Grandmother[4] and later to Mother to ensure that the child received timely and appropriate medical care.

It is disingenuous of the Agency to now argue in opposition of this [c]ourt's directives from the Order of August 16, 2016, as the Agency indicated its support for the directives off the record, made no objection to the directives at the time the Order was entered, and did not appeal or preserve an objection at any time subsequent to the [c]ourt entering that Order.  It is only now, after the Agency is found in contempt for failure to follow directives of the [c]ourt, that the Agency raises an objection to the initial directives, which included the Agency making a *medical appointment* for the child.

The Court found that the Agency repeatedly ignored this [c]ourt's directives.  At the hearing on October 25, 2016, this [c]ourt not only found that the Agency ignored directives to make a medical appointment for the child; it also found that the Agency failed to provide *any* services to the child or the family.  The Agency showed a deliberate indifference to the directives of this [c]ourt and to the welfare of the child.

At the hearing held on October 25, 2016, the [c]ourt directed the Agency to reimburse Paternal Grandmother for expenses paid on behalf of the minor child, as the [c]ourt found that the Agency failed and refused to comply with [c]ourt directives, particularly the directive to schedule the child for a medical consultation.

The [c]ourt found that any out-of-pocket expenses Paternal Grandmother incurred were due to the Agency's failure to follow Court directives.  In addition, the record shows that due to Agency's failure to provide the minor child with the appropriate medical care, as was directed by the Court per the Order of Adjudication and Disposition of August 16, 2016, the GAL requested a change in legal custody related to medical decisions for the child.  No objection was made by the Agency and no appeal was taken.  Since the Agency refused to ensure

that the child was timely seen by a physician, Paternal Grandmother was forced to make medical appointments for the child at her expense. On the Order of August 16, 2016, the [c]ourt directed the Agency to "immediately make a [18] Pa.C.S.A. §3201[6] medical appointment as requested by the GAL and the GAL is authorized to represent the child in an action pursuant to [18] Pa.C.S.A. §3201 et seq, specifically §3206(c)." *Id.* at 3. This [c]ourt failed to find anywhere in the record where the [c]ourt ordered the child to undergo an abortion, or otherwise directed the Agency to arrange or pay for any such procedure.

The [c]ourt found the Agency "in contempt of the Court Order for its complete lack of follow through with the directives of [the] Court" and as this [c]ourt stated, the lack of follow through causes this [c]ourt "concern about the Agency and some caseworkers. . . ability to do their job." Hr. Tr. 29: 3-8 (October 25, 2016). To be punished for contempt, a party must not only have violated a court order, but that order must have been "definite, clear, and specific."[7] We find that the Order of August 16, 2016 was very clear in its directive to the Agency, and we find that supported a finding that the Agency willfully did not comply. This [c]ourt entered this finding of contempt after a full hearing, scheduled by the Agency, where the GAL and the Agency provided evidence that supported a finding that the Agency had willfully chosen to ignore the [c]ourt's directives throughout the time of the Agency involvement with the child. The purpose of the Status Review is to ensure that the services directed were being provided by the Agency. The court found no services were provided. The sanction upon the Agency, of the fine made payable to Paternal Grandmother, is compensation for the damage Paternal Grandmother sustained by reason of the Agency's conduct in failing to follow the [c]ourt's directives.

The [c]ourt notes a culture at the Agency where caseworkers choose what directives to follow. The purpose of the Juvenile Act is for the Court to ensure that the best interest of the child is a paramount consideration, and the Agency must follow the directives of the [c]ourt to protect the child.

Based on reliable and credible evidence that demonstrated Appellant's [CYF's] continuing pattern of inability to follow [c]ourt directives, the [c]ourt found that the Agency was in contempt of the [c]ourt Order and was sanctioned appropriately.

J-S22043-17

Competent evidence on the record supports the outcome.

_____

[1] The Court notes that the service requirements for the Agency and family are outlined in the Court Ordered services and conditions that was prepared by the Agency and presented for incorporation.

[2] Filed August 29, 2016.

[3] Motion to Modify Order of August 16, 2016.

[4] By Order dated August 30th, 2016, this [c]ourt granted [N.T.-C. (Paternal Grandmother)] "the right and authority to make reasonable and appropriate medical decisions for the minor(s), including the authority to consent to emergency and long-term medical treatment".

[5] By the Status Review Order dated October 25, 2016, this [c]ourt transferred medical rights to both CYF and Mother.

[6] We note [that] in the Order the statute was incorrectly stated as 32 Pa.C.S.A. § 3201 et seq.

[7] *Lachat v. Hinchcliffe*, 769 A.2d 481, 488 (Pa. Super. Ct. 2001)(quoting *Marian Shop Inc. v. Baird*, 448 Pa.Super. 52, 670 A.2d 671, 673 (1996).)

Trial Court Rule 1925(a) Opinion, 12/23/16, at 1-7 (emphasis in original) (footnotes in original).

The statute to which the trial court referred, 18 Pa.C.S. § 3201, is known as the Abortion Control Act. Section 3205 of the Abortion Control act relates to the informed consent of the woman upon whom the abortion is to be performed. Section 3205 provides:

**§ 3205. Informed Consent**

- 26 -

**(a) General rule.—** No abortion shall be performed or induced except with the voluntary and informed consent of the woman upon whom the abortion is to be performed or induced. . . .

18 Pa.C.S. § 3205.

Section 3206 of the Abortion Control Act provides as follows:

## § 3206.  Parental consent.

**(a)    General rule.**--Except in the case of a medical emergency, or except as provided in this section, if a pregnant woman is less than 18 years of age and not emancipated, or if she has been adjudged an incapacitated person under 20 Pa.C.S. §5511 (relating to petition and hearing; independent evaluation), *a physician shall not perform an abortion upon her unless, in the case of a woman who is less than 18 years of age, she first obtains the informed consent both of the pregnant woman and of one of her parents; or, in the case of a woman who is an incapacitated person, she first obtains the informed consent of her guardian.  In deciding whether to grant such consent, a pregnant woman's parent or guardian shall consider only their child's or ward's best interests.*  In the case of a pregnancy that is the result of incest where the father is a party to the incestuous act, the pregnant woman need only obtain the consent of her mother.

**(b)   Unavailability of parent or guardian.**--If both parents have died or are otherwise unavailable to the physician within a reasonable time and in a reasonable manner, consent of the pregnant woman's guardian or guardians shall be sufficient.  If the pregnant woman's parents are divorced, consent of the parent having custody shall be sufficient.  If neither any parent nor a legal guardian is available to the physician within a reasonable time and in a reasonable manner, consent of any adult person standing in loco parentis shall be sufficient.

*(c) Petition to court for consent.--If both of the parents or guardians of the pregnant woman refuse to consent to the performance of an abortion or if she elects not to seek the consent of either of her parents or of her guardian, the court of common pleas of the judicial district in which the applicant resides or in which the abortion is sought shall, upon petition or motion, after an appropriate hearing, authorize a physician*

*to perform the abortion if the court determines that the pregnant woman is mature and capable of giving informed consent to the proposed abortion, and has, in fact, given such consent.*

*(d)  Court order.--If the court determines that the pregnant woman is not mature and capable of giving informed consent or if the pregnant woman does not claim to be mature and capable of giving informed consent, the court shall determine whether the performance of an abortion upon her would be in her best interests.  If the court determines that the performance of an abortion would be in the best interests of the woman, it shall authorize a physician to perform the abortion.*

**(e)  Representation in proceedings.**--The pregnant woman may participate in proceedings in the court on her own behalf and the court may appoint a guardian ad litem to assist her.  The court shall, however, advise her that she has a right to court appointed counsel, and shall provide her with such counsel unless she wishes to appear with private counsel or has knowingly and intelligently waived representation by counsel.

**(f) Proceedings.**—

(1)  Court proceedings under this section shall be confidential and shall be given such precedence over other pending matters as will ensure that the court may reach a decision promptly and without delay in order to serve the best interests of the pregnant woman.  In no case shall the court of common pleas fail to rule within three business days of the date of application.  A court of common pleas which conducts proceedings under this section shall make in writing specific factual findings and legal conclusions supporting its decision and shall, upon the initial filing of the minor's petition for judicial authorization of an abortion, order a sealed record of the petition, pleadings, submissions, transcripts, exhibits, orders, evidence and any other written material to be maintained which shall include its own findings and conclusions.

(2)  The application to the court of common pleas shall be accompanied by a non-notarized verification stating that the information therein is true and correct to the best of

the applicant's knowledge, and the application shall set forth the following facts:

(i)  The initials of the pregnant woman.

(ii)  The age of the pregnant woman.

(iii) The names and addresses of each parent, guardian or, if the minor's parents are deceased and no guardian has been appointed, any other person standing in loco parentis to the minor.

(iv) That the pregnant woman has been fully informed of the risks and consequences of the abortion.

(v) Whether the pregnant woman is of sound mind and has sufficient intellectual capacity to consent to the abortion.

(vi) A prayer for relief asking the court to either grant the pregnant woman full capacity for the purpose of personal consent to the abortion, or to give judicial consent to the abortion under subsection (d) based upon a finding that the abortion is in the best interest of the pregnant woman.

(vii)  That the pregnant woman is aware that any false statements made in the application are punishable by law.

(viii) The signature of the pregnant woman. Where necessary to serve the interest of justice, the orphans' court division, or, in Philadelphia, the family court division, shall refer the pregnant woman to the appropriate personnel for assistance in preparing the application.

(3) The name of the pregnant woman shall not be entered on any docket which is subject to public inspection.  All persons shall be excluded from hearings under this section except the applicant and such other

persons whose presence is specifically requested by the applicant or her guardian.

(4) At the hearing, the court shall hear evidence relating to the emotional development, maturity, intellect and understanding of the pregnant woman, the fact and duration of her pregnancy, the nature, possible consequences and alternatives to the abortion and any other evidence that the court may find useful in determining whether the pregnant woman should be granted full capacity for the purpose of consenting to the abortion or whether the abortion is in the best interest of the pregnant woman.  The court shall also notify the pregnant woman at the hearing that it must rule on her application within three business days of the date of its filing and that, should the court fail to rule in favor of her application within the allotted time, she has the right to appeal to the Superior Court.

**(g)  Coercion prohibited.**--Except in a medical emergency, no parent, guardian or other person standing in loco parentis shall coerce a minor or incapacitated woman to undergo an abortion. Any minor or incapacitated woman who is threatened with such coercion may apply to a court of common pleas for relief.  The court shall provide the minor or incapacitated woman with counsel, give the matter expedited consideration and grant such relief as may be necessary to prevent such coercion.  Should a minor be denied the financial support of her parents by reason of her refusal to undergo abortion, she shall be considered emancipated for purposes of eligibility for assistance benefits.

**(h) Regulation of proceedings.**--No filing fees shall be required of any woman availing herself of the procedures provided by this section. An expedited confidential appeal shall be available to any pregnant woman whom the court fails to grant an order authorizing an abortion within the time specified in this section.  Any court to which an appeal is taken under this section shall give prompt and confidential attention thereto and shall rule thereon within five business days of the filing of the appeal.  The Supreme Court of Pennsylvania may issue such rules as may further assure that the process provided in this section is conducted in such a manner as will ensure confidentiality and sufficient precedence over other pending matters to ensure promptness of disposition.

**(i) Penalty.**--Any person who performs an abortion upon a woman who is an unemancipated minor or incapacitated person to whom this section applies either with knowledge that she is a minor or incapacitated person to whom this section applies, or with reckless disregard or negligence as to whether she is a minor or incapacitated person to whom this section applies, and who intentionally, knowingly or recklessly fails to conform to any requirement of this section is guilty of "unprofessional conduct" and his license for the practice of medicine and surgery shall be suspended in accordance with procedures provided under the act of October 5, 1978 (P.L.1109, No.261), known as the Osteopathic Medical Practice Act, the act of December 20, 1985 (P.L.457, No.112), known as the Medical Practice Act of 1985, or their successor acts, for a period of at least three months.  Failure to comply with the requirements of this section is prima facie evidence of failure to obtain informed consent and of interference with family relations in appropriate civil actions.  The law of this Commonwealth shall not be construed to preclude the award of exemplary damages or damages for emotional distress even if unaccompanied by physical complications in any appropriate civil action relevant to violations of this section.  Nothing in this section shall be construed to limit the common law rights of parents.

18 Pa.C.S. § 3206 (emphasis added).

In **In re Doe**, 613 Pa. 339, 33 A.3d 615 (2011), our Supreme Court set forth the only published interpretation of the court's responsibilities under section 3206(c), which is known as the "judicial bypass" section.  **Id.** at 342, 357-358, 33 A.3d at 617, 627.  The Supreme Court determined that the appellate courts must follow an abuse of discretion standard in reviewing a trial court's maturity/capacity determination under the judicial bypass section.  **Id.** at 353-354, 33 A.3d at 624.  The Supreme Court explained:

"[a]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result

- 31 -

of partiality, prejudice, bias or illwill . . . discretion is abused."
An abuse of discretion may not be found merely because an
appellate court might have reached a different conclusion based
on the record before it. A trial court's exercise of discretion,
however, is not unfettered.

*Id.* at 355-356, 33 A.3d at 626.

In **In re Doe**, the Supreme Court reviewed the Superior Court's ruling
on the trial court's denial of a minor child's petition for judicial authorization
of an abortion under section 3206(c) of the Abortion Control Act. Likewise,
in **In re L.D.F.**, a panel of this Court reviewed the trial court's denial of a
minor child's petition for judicial authorization of an abortion under section
3206(c) of the Abortion Control Act. Notably, both cases involved a petition
filed by the minor child seeking to have judicial authorization of an abortion
under section 3206(c) of the Abortion Control Act, and evidentiary hearings
on the petitions. In contrast, the present appeal did not involve petitions
under section 3206(c) of the Abortion Control Act and an evidentiary
hearing.

With regard to CYF's due process argument, we observe:

Formal notice and an opportunity to be heard are
fundamental components of due process when a person may be
deprived in a legal proceeding of a liberty interest, such as
physical freedom, or a parent's custody of her child. Both notice
and an opportunity to be heard must be afforded at a meaningful
time in a meaningful manner. As previous panels of this Court
have explained: [n]otice, in our adversarial process, ensures
that **each party** is provided adequate opportunity to prepare
and thereafter properly advocate its position, ultimately exposing
all relevant factors from which the finder of fact may make an
informed judgment.

***Everett v. Parker***, 889 A.2d 578, 580 (Pa. Super. 2005) (internal citations

and quotation marks omitted) (emphasis added).

> When reviewing contempt orders, we must consider that:
>
> Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge.

***Langendorfer v. Spearman***, 797 A.2d 303, 307 (Pa. Super. 2002)

(quoting ***Garr v. Peters***, 773 A.2d 183, 189 (Pa. Super 2001)). "The court

abuses its discretion if it misapplies the law or exercises its discretion in a

manner lacking reason." ***Godfrey v. Godfrey***, 894 A.2d 776, 780 (Pa.

Super. 2006). Additionally, "[i]n proceedings for civil contempt of court, the

general rule is that the burden of proof rests with the complaining party to

demonstrate, by preponderance of the evidence that the defendant is in

noncompliance with a court order." ***Lachat v. Hinchcliffe***, 769 A.2d 481,

488 (Pa. Super. 2001). However, a mere showing of noncompliance with a

court order, or even misconduct, is never sufficient alone to prove civil

contempt." ***Id.*** Moreover, we recognize that:

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

***Stahl v. Redcay***, 897 A.2d 478, 489 (Pa. Super. 2006).

Here, the trial court went well beyond the scope of the Juvenile Act proceedings and determinations set forth in section 6302 and 6351 of the Juvenile Act and went to a matter appropriately included in Abortion Control Act proceedings. Section 3206 of the Abortion Control Act expressly sets forth the procedures for judicial bypass in order for a minor to have an abortion under court direction. Not only did CYF have no notice of a petition for a judicial bypass under section 3206 of the Abortion Control Act, because none was filed, but it also lacked notice of any contempt proceedings against it, because no petition for contempt was filed, either. There was no petition under section 3206 of the Abortion Control Act or any contempt petition before the trial court when the court imposed the sanction of requiring CYF to reimburse Paternal Grandmother $540 for the amount of money she paid for Child's abortion. CYF certainly was not on notice that, by delaying a few days in taking Child to a physician, between the August 16, 2016 dependency order and the August 30, 2016 order, in which the court transferred medical rights to Paternal Grandmother, having to pay for the cost of child to undergo an abortion was even a possible sanction to be imposed on CYF. This is especially true where there is nothing in the Abortion Control Act that would appear to require an agency to pay for an abortion for a minor child, even a minor child who proceeds under the judicial bypass section, 18 Pa.C.S. § 3206(c), and the trial court does not cite any such authority. Thus, we conclude that the trial court could not

indirectly order CYF to pay for Child's abortion under the Abortion Control Act, by means of a contempt finding and sanction, where it could not do so directly under the Abortion Control Act.

Accordingly, we find that the trial court abused its discretion, as it failed to follow proper procedure when it found CYF in contempt of court, and sanctioned CYF, requiring it to reimburse Paternal Grandmother for the cost of Child's abortion. We are constrained to vacate the trial court's order finding CYF in contempt and directing CYF to pay Grandmother $540, and remand the matter for further dependency proceedings under the Juvenile Act.

Order vacated, in part, insofar as it imposes a $540 sanction on CYF; case remanded for further proceedings. Jurisdiction relinquished.

Judge Shogan joins the Memorandum.

Judge Moulton concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/6/2017